**IN THE SUPREME COURT OF MISSISSIPPI**

**NO. 2009-CA-00320-SCT**

*LINCOLN ELECTRIC COMPANY AND THE*
*ESAB GROUP, INC.*

*v.*

*STANLEY MCLEMORE*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/26/2008 |
| TRIAL JUDGE: | HON. LAMAR PICKARD |
| COURT FROM WHICH APPEALED: | COPIAH COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | MICHAEL W. ULMER |
| | JAMES JOSEPH CRONGEYER, JR. |
| | HUGH RUSTON COMLEY |
| | JAMES MATTHEW TYRONE |
| | MARK C. CARROLL |
| | R. DAVID KAUFMAN |
| | M. PATRICK MCDOWELL |
| ATTORNEYS FOR APPELLEE: | JAMES D. SHANNON |
| | JAMIE H. EDWARDS |
| | JOE ROBERT NORTON, IV |
| | JOHN E. HERRICK |
| | ELIZABETH C. WARD |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND RENDERED - 12/09/2010 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CHANDLER, JUSTICE, FOR THE COURT:**

¶1.    This case involves a welder's claim of product liability and failure to warn against

Lincoln Electric Company (Lincoln) and the ESAB Group, Inc. (ESAB), manufacturers of

welding rods ("Defendants"), for exposure to harmful welding fumes that resulted in his eventual diagnosis of manganism, a neurological disease caused by high exposure to manganese. The plaintiff, Stanley McLemore, alleged that he had used the Defendants' rods, which contained manganese, to weld materials together.

¶2.     McLemore filed a complaint in the Circuit Court of Copiah County on November 14, 2005. An amended complaint followed on March 3, 2006. In April 2007, the Defendants filed a motion for summary judgment, claiming that McLemore had filed suit outside the three-year statute of limitations. The trial court denied the motion for summary judgment. The Defendants also filed a motion to exclude the expert testimony of Dr. Michael Swash, which the trial court denied.

¶3.     The matter proceeded to trial on November 6, 2008. A jury returned a verdict in favor of McLemore finding the Defendants liable and awarding McLemore $1,855,000. The Defendants filed post-trial motions for judgment notwithstanding the verdict (JNOV) or, in the alternative, for a new trial. Following the trial court's denial of the motions, the Defendants filed a notice of appeal raising three issues:

> **I.     Whether the trial court improperly admitted McLemore's medical expert's diagnosis.**
>
> **II.    Whether McLemore proved that each Defendant's products were a substantial factor in causing his injury.**
>
> **III.   Whether McLemore's claims were barred by the statute of limitations, and whether the form of the verdict misstated the relevant question on the issue of statute of limitations.**

¶4.     Finding the issue of the statute of limitations to be dispositive, this Court reverses and renders the trial court judgment enforcing the verdict of the jury.

2

**FACTS**

¶5. Stanley McLemore worked as a welder for almost thirty years. In the course of his career, McLemore worked all over the country, with two long stints at Grand Gulf Nuclear Power Station from 1980 through 1984 and from 1993 through 1998. In December 2001, McLemore experienced difficulty welding and developed slowness in his left hand and arm. McLemore was left-handed and relied on his left hand in his welding work.

¶6. At first, McLemore thought that he had pinched a nerve, and he went to see a chiropractor. The chiropractor referred McLemore to Dr. Joseph Farina, a neurologist. Dr. Farina informed McLemore that he had Parkinsonism or Parkinsonian syndrome, and his condition could have been related to welding. McLemore went to the office of an attorney whom he previously had used for legal work, after Dr. Farina examined him and mentioned the attorney's name.

¶7. Subsequently, McLemore saw Dr. Michael Graeber, Dr. Albert Hung, Dr. Michael Swash, Dr. Robert Herdon, Dr. David Doorenbos, and Defendants' medical expert, Dr. Ray Watts. When Dr. Hung examined McLemore in Boston in December 2002, he advised McLemore to discontinue welding.

¶8. Dr. Swash was McLemore's main expert witness at trial. This doctor was the only physician to diagnose McLemore with manganism. According to Dr. Swash, manganism is a syndrome with features of atypical Parkinsonism that is caused by exposure to manganese. While McLemore saw a host of other physicians between December 2001 and his trial date in 2008, they determined that he had some form of Parkinsonism. A few considered

3

manganism, but ultimately decided against that diagnosis. Only Dr. Swash determined that McLemore had manganism.

¶9. McLemore stated that he first learned that he suffered from manganism in 2005. However, McLemore filed various lawsuits claiming neurological injuries from exposure to welding products as early as February 2004. The first complaint was filed on February 13, 2004, against various corporations for injuries suffered from those defendants' sale and/or distribution of defective welding consumables. The complaint did not name either Lincoln Electric or ESAB, although it named John Doe Defendants 1-20. On August 31, 2004, McLemore filed a complaint alleging "serious neurological injuries" due to exposure to manganese in the Defendants' welding consumables. This complaint named Lincoln Electric and ESAB and other defendants, was not served on anyone, and was dismissed voluntarily by McLemore on December 28, 2004. McLemore filed another complaint on November 14, 2005, alleging "serious neurological injuries" due to exposure to manganese in the Defendants' welding consumables. This complaint was not served on anyone. McLemore filed an amended complaint on March 3, 2006, again alleging "serious neurological injuries" due to exposure to manganese in the Defendants' welding consumables. The Defendants were served with the amended complaint no later than March 14, 2006.

## DISCUSSION

### I. Statute of limitations and form of the verdict

¶10. This Court applies a de novo standard of review to the statute of limitations. *Harris v. Darby*, 17 So. 3d 1076, 1078 (Miss. 2009) (citing *Ellis v. Anderson Tully Co.*, 727 So. 2d 716, 718 (Miss. 1998)).

4

¶11.   The Defendants claim that the trial court erred on two issues concerning the statute of limitations by (1) denying the Defendants' motion for JNOV (and their motion for summary judgment) for McLemore's alleged failure to file within the three-year statute of limitations under Mississippi Code Section 15-1-49, based on the date of discovery or date he should have discovered his injury, and (2) giving a jury-verdict form that asked the jury to determine when McLemore should have known about his *manganism* instead of the more general inquiry of when he should have known about his *injury*.  Finding the first of the two issues dispositive, this Court will not address the form of the jury verdict.

A.     Section 15-1-49

¶12.   Defendants argue that McLemore knew that he had an injury on September 3, 2002, when Dr. Farina diagnosed him with Parkinsonism and informed him that his condition may have been related to his occupation as a welder.  Accordingly, the Defendants reason that McLemore should have filed suit on or before September 3, 2005, yet he filed this cause of action on November 14, 2005.

¶13.   McLemore, on the other hand, argues that his cause of action did not accrue until October 2005, when he was diagnosed with manganism.[1]  Further, McLemore argues that both parties were in agreement that welding fumes do not cause Parkinson's disease. However, it also was undisputed that welding fumes may cause manganism.  McLemore contends that he had no cause of action until he knew that he had manganism.  Prior to his

---

[1] There is some dispute between the parties concerning who informed McLemore that he had manganism and when that diagnosis was given to McLemore.  The general date proposed by McLemore is October 2005.

diagnosis, McLemore visited physicians in an effort to identify his condition. Until he knew he had manganism, McLemore argued that he did not know that the welding fumes had caused his damages.

¶14. Mississippi Code Section 15-1-49 concerns the three-year statute of limitations and states:

> (1) All actions for which no other period of limitation is prescribed shall be commenced within three (3) years next after the cause of action accrued, and not after.
>
> (2) In actions for which no other period of limitation is prescribed and which involve latent injury or disease, the cause of action does not accrue until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury.

Miss. Code Ann. § 15-1-49 (Rev. 2003).

¶15. Pursuant to Mississippi Code Section 15-1-49(2), a plaintiff's cause of action accrues at the point at which he discovered, or by reasonable diligence should have discovered, the injury. Therefore, this Court must consider the application of the latent-injury/discovery rule and whether McLemore's statute of limitations began to run when either (1) he knew of his Parkinsonism, or (2) he knew of the diagnosis of manganism.

¶16. While McLemore's November 2008 trial preceded this Court's most recent application of Section 15-1-49(2), and the litigants and trial court did not have the benefit of this Court's decision in *Angle v. Koppers, Inc.*, 42 So. 3d 1 (Miss. 2010), the case nonetheless is applicable to this appeal. In *Angle*, this Court determined that the plain language of Section 15-1-49 supports an interpretation "that the cause of action accrued upon

6

discovery of the injury, *not discovery of the injury and its cause*." ***Id***. at 5 (emphasis in original).

¶17.   In ***Angle***, the plaintiff filed suit on March 16, 2006, against various defendants including Koppers, a wood-treatment plant, and others for injuries suffered as a result of harmful exposure to toxic chemicals from 1984 through 2001. ***Id.*** at 2.   The defendants moved for summary judgment based on Section 15-1-49 and its three-year statute of limitations. ***Id***. at 3.   Angle's last injury occurred in 2001, five years before she filed the complaint. ***Id***.

¶18.   Without providing a known date, Angle responded that the statute of limitations began to run when she knew that she had an injury and the *cause* of her injury. ***Id.*** at 3.   The Court found that the "cause of action accrued upon discovery of the injury, *not discovery of the injury and its cause*." ***Id***. at 5 (emphasis in original).   The Court found that Angle's injury accrued, at the latest, in 2001, when she was diagnosed with her last disease. ***Id***. at 7.

¶19.   In reaching its decision, this Court considered a number of prior cases, including ***Owens-Illinois, Inc. v. Edwards***, 573 So. 2d 704 (Miss. 1990); ***Schiro v. American Tobacco Company***, 611 So. 2d 962 (Miss. 1992); and ***PPG Architectural Finishes, Inc. v. Lowery***, 909 So. 2d 47, 48 (Miss. 2005). ***Owens-Illinois*** was an asbestosis case that handed down prior to the addition of subsection (2) to Mississippi Code Section 15-1-49, concerning the common-law discovery rule. ***Owens-Illinois***, 573 So. 2d at 705.   The plaintiff, Edwards, a shipbuilder, was exposed to asbestos from the 1940s through 1984. ***Id***. at 705.   Edwards's last exposure to asbestos occurred no later than December 31, 1976. ***Id***.   He had shortness of breath in 1980. ***Id***.   Medical personnel told Edwards that he should be examined for the

possibility of asbestosis in 1983; however; x-rays revealed no signs of the disease. *Id*. Edwards was diagnosed finally with pulmonary pleural asbestosis on August 26, 1986. *Id*. He filed suit on September 29, 1986, as part of a consolidated action. *Id*. The Court found that the cause of action had accrued and the statute of limitations period began to run "when the plaintiff can reasonably be held to have knowledge of the injury or disease." *Id*. at 709. The Court held that the plaintiff's action accrued on August 26, 1986, the date of his diagnosis of pulmonary pleural asbestosis.

¶20.    This Court also discussed its decision in *Schiro v. American Tobacco Company*, 611 So. 2d 962 (Miss. 1992). *See Angle*, 42 So. 3d at 6. The *Schiro* court cited *Owens-Illinois* for the rule that "a cause of action accrues when it comes into existence as an enforceable claim; that is, when the right to sue becomes vested." *Schiro*, 611 So. 2d. at 964 (citing *Owens-Illinois*, 573 So. 2d at 706). In *Shiro*, the plaintiff smoked for more than thirty years. *Schiro*, 611 So. 2d at 963. She had a series of health problems including a diagnosis of emphysema in the late 1960s or 1970s; an aortoiliac bypass in 1975; a few episodes of hemoptysis (coughing up blood) in April and November 1981; detection of a small malignant mass in December 1981; and diagnosis of the mass as cancerous in January 24, 1982. *Id*. She filed suit on January 22, 1988. *Id*. The defense asserted that her cause of action accrued on either the day she stopped smoking, the day she coughed up blood and believed that she had cancer, or the day when the doctor diagnosed her with a malignant lung mass, all of which fell outside the then-six-year limitation period. *Id*. The Court held that the statute of limitations began to run on the day Schiro discovered that the mass was cancerous, because, prior to that time, her suit would have been premature. *Id*. at 965. While the *Schiro* court

8

discussed the cause of the cancer as smoking, the *Angle* court noted that "the proper inquiry under the statute should have been the plaintiff's discovery of the injury or disease . . . not the discovery of a causative relationship between smoking and the cancer." *Angle*, 42 So. 3d at 6.

¶21.    More recently, in *Lowery*, a plaintiff went to work shortly after the office had been painted on October 1, 1999. *PPG Architectural Finishes, Inc. v. Lowery*, 909 So. 2d 47, 48 (Miss. 2005). Lowery noticed a strong paint odor when she arrived at work. *Id*. After a few hours, she became sick and disoriented. *Id*. Lowery also contacted the poison control center and reported the problem. *Id*. After passing out, Lowery went to the hospital and was treated and released. *Id*. at 48-49. When Lowery returned to the emergency room three days later, the doctor's impression was that she had experienced toxin exposure. *Id*.

¶22.    Lowery filed suit on June 12, 2000, and then amended her complaint to add PPG as a defendant on November 13, 2003. *Lowery*, 909 So. 2d at 49. PPG asserted the affirmative defense of statute of limitations. *Id*. In *Lowery*, the Court explained that a latent injury is one which is "undiscoverable by reasonable methods." *Id*. at 51 (citing *Donald v. Amoco Prod. Co.*, 735 So. 2d 161, 168 (Miss. 1999)). The Court considered "whether the plaintiff knew or reasonably should have known that an injury existed." *Lowery*, 909 So. 2d at 51 (citing *Sweeney v. Preston*, 642 So. 2d 332, 336 (Miss. 1994)). To determine whether she knew or reasonably should have known that she had an injury, this Court analyzed the actions taken by Lowery. *Lowery*, 909 So. 2d at 51. The Court held that Lowery knew of her injury on October 1, 1999, the date of exposure. *Id*. In fact, the Court noted that Lowery, by her own admission, "knew when, how and by whom she had been injured on the

9

night of her acute exposure." *Id*. She had called the poison control center, had sought treatment from the emergency room, and had suffered immediate problems from exposure to the paint. *Id*. at 52.

¶23. Applying *Angle* to the instant case, McLemore knew of his injury on September 3, 2002. At that time, Dr. Farina informed him of the correlation between his symptoms and welding. As clarified in *Angle*, Section 15-1-49 does not require a plaintiff to know the cause of the injury before accrual of the cause of action. *Angle*, 42 So. 3d at 6. While the notice of this causal relationship generally is irrelevant to the accrual of the cause of action, it shows McLemore's knowledge of his injury at that time. Furthermore, McLemore thereafter sought legal advice which resulted in an initial filing of a lawsuit in 2004 claiming "serious neurological injury" from exposure to manganese products. Consequently, McLemore's argument that he had no knowledge of his injury and its relation to welding until his diagnosis of manganism fails under this Court's holdings in *Angle* and *Lowery*. Under *Angle*, knowledge of the cause of an injury is irrelevant to the analysis. *Angle*, 42 So. 3d at 5. The inquiry is when the party knew or should have known of an injury. *Id*. Further, applying *Lowery*, this Court considers the actions taken by a party. *Lowery*, 909 So. 2d at 51.

¶24. McLemore had difficulty using his left hand in December 2001. By September 3, 2002, Dr. Farina had informed McLemore that he had Parkinsonism and that it might have been related to his welding work. Thereafter, McLemore sought legal advice and filed a complaint alleging "serious neurological injury" related to manganese exposure. These

10

events and actions by McLemore show that he knew, (or should have known) no later than September 2002, that he had an injury.

### B.    Tolling

¶25.    Although not central to the disposition of this case, this Court will address the issue of tolling for a complete analysis. In a footnote to their brief, the Defendants raised concerns about multiple filings of this suit. As noted previously, the Defendants contend that McLemore knew or should have known that he had an injury on September 3, 2002, after his visit with Dr. Farina. At that medical appointment, Dr. Farina told McLemore that his condition might be caused by welding and that he should hire a lawyer. The Defendants contend that McLemore should have filed his complaint by September 3, 2005, but the complaint was not filed until November 14, 2005, and an amended complaint was not served on them until March 2006.

¶26.    In this context, the Defendants maintain that any argument by McLemore that the filing of a prior lawsuit tolled the statute of limitations is incorrect. On August 31, 2004, McLemore filed a complaint which named the Defendants, was not served on anyone, and was dismissed voluntarily by McLemore on December 28, 2004.[2] McLemore filed another complaint on November 14, 2005, (which was not served on anyone) and filed an amended complaint on March 3, 2006. The Defendants were served with the amended complaint no later than March 14, 2006. Based on these events, the Defendants assert that (1) McLemore

---

[2] McLemore also filed a suit in February 2004. The Defendants take no issue with the February complaint and begin their tolling discussion with the August 31, 2004, complaint.

11

should have filed suit by September 3, 2005, (three years after his known injury) and did not; and (2) any argument concerning tolling of the statute of limitations is without merit.

¶27.    McLemore argues that there was proper tolling. In the alternative, he argues that his injury did not accrue until he was diagnosed with manganism.

¶28.    Recently, in *Marshall v. Kansas City Southern Railways Company*, 7 So. 3d 210, 213-214 (Miss. 2009), this Court addressed whether a voluntary dismissal of a complaint had any effect on the tolling of the statute of limitations. We found that it did not toll the limitations period. *Id.* at 213-14. In *Marshall*, this Court stated:

> This Court previously has held that a voluntary dismissal without prejudice:
>
>> [D]oes not deprive the defendant of any defense he may be entitled to make to the new suit, nor confer any new right or advantage on the complainant (plaintiff), and hence *it will not have the effect of excepting from the period prescribed by the statute of limitations, the time during which that suit was pending.*
>
> *Smith v. Copiah County*, 232 Miss. 838, 100 So. 2d 614, 616 (1958) (quoting *W.T. Raleigh Co. v. Barnes*, 143 Miss. 597, 109 So. 8, 9 (1926) (quoting *Nevitt v. Bacon*, 32 Miss. 212, 228 (1856) (emphasis added))).

*Id.* In other words, when a party chooses voluntarily to dismiss an action, the party receives no tolling benefit.

¶29.    "Ordinarily, when a complaint is filed and properly served, that complaint tolls the running of the statute of limitations." *Price v. Clark*, 21 So. 3d 509, 521 (Miss. 2009) (citing *Owens v. Mai*, 891 So. 2d 220, 223 (Miss. 2005)). We keep in mind that "[w]hile the filing of a complaint tolls the statute of limitations, if service is not made upon the defendant within 120 days as required by M.R.C.P. 4(h), the limitations period resumes running at the end of

12

the 120 days." ***Owens v. Mai***, 891 So. 2d 220, 223 (Miss. 2005). However, when a party chooses voluntarily to dismiss the action, the complaint does not toll the running of the statue of limitations. ***Marshall***, 7 So. 3d at 213. In ***Koestler v. Mississippi Baptist Health Systems, Inc.***, 45 So. 3d 280, 283 (Miss. 2010), this Court again held that "[t]he filing of a complaint does not toll the statute of limitations when the plaintiff voluntarily dismisses the suit."

¶30.    McLemore voluntarily dismissed his August 31, 2004, complaint on December 28, 2004. Because McLemore voluntarily dismissed the August 2004 complaint, his cause of action was not tolled. McLemore filed his next complaint, which was not served, on November 14, 2005. Assuming that the November 2005 complaint was filed and served on a Defendant, the complaint still was filed outside the three-year statute of limitations which began to run on September 3, 2002, and ended September 3, 2005. The March 2006 amended complaint that was filed and served on the Defendants, likewise, has no bearing on the analysis of this case because it also was filed outside the three-year limitations period.

## CONCLUSION

¶31.    The judgment of the Circuit Court of Copiah County enforcing the jury verdict is reversed and rendered. McLemore failed to file his cause of action within the applicable statute of limitations, and his voluntary dismissal of the August 2004 complaint provided no tolling for his action.

¶32.    **REVERSED AND RENDERED**.

  **WALLER, C.J., CARLSON, P.J., DICKINSON, RANDOLPH, LAMAR AND PIERCE, JJ., CONCUR. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY GRAVES, P.J.**

  **KITCHENS, JUSTICE, DISSENTING:**

13

¶33. For the reasons stated in my dissenting opinion in *Angle v. Koppers*, 42 So. 3d 1, 9-10 (Miss. 2010) (Kitchens, J., dissenting), I respectfully disagree with the majority's holding that the statute of limitations begins to run upon the discovery of the injury rather than upon one's discovery that he or she has a cause of action. However, even if I were to accept that the statute of limitations begins to run on the date of the injury, I still would disagree with today's holding. The jury unanimously found that McLemore could not have discovered his injury until October of 2005. Because the majority substitutes its judgment for that of the jury, and because I find no reversible error, I would affirm the judgment, and I respectfully dissent.

¶34. This Court repeatedly has held that "the statute of limitations commences upon discovery of an injury, and discovery is an issue of fact to be decided by a jury when there is a genuine dispute." *Donald v. Amoco Prod. Co.*, 735 So. 2d 161, 167 (Miss. 1999). *See also, e.g., Weathers v. Metro. Life Ins. Co.*, 14 So. 3d 688, 692 (Miss. 2009) (quoting same); *Fletcher v. Lyles*, 999 So. 2d 1271, 1277 (Miss. 2009) (quoting same). Only if "reasonable minds could not differ as to the conclusion" may the question be decided by the courts. *Stringer v. Trapp*, 30 So. 3d 339, 342 (Miss. 2010) (quoting *Smith v. Sanders*, 485 So. 2d 1051, 1052 (Miss. 1986)). In the present case, the jury was asked "[o]n what date do you find by a preponderance of the evidence that the plaintiff discovered, or by reasonable diligence should have discovered, his claimed neurological injury, manganism?" The jury unanimously responded "10/05," that is, October of 2005. Thus, based on the jury's finding of fact, the plaintiff had filed his action roughly one month after discovering his injury, well within the three-year statute of limitations.

14

¶35. Today's opinion further limits this Court's precedent by holding that one need not know the nature of his or her injury, only that there is some type of injury. This holding is contrary to prior cases in which we have held that discovery of an injury cannot begin until one has been diagnosed. *See Owens-Illinois, Inc. v. Edwards*, 573 So. 2d 704, 709 (Miss. 1990) (statute of limitations began to run on date of medical diagnosis); *Schiro v. Am. Tobacco Co.*, 611 So. 2d 962, 963-64 (Miss. 1992) (statute of limitations began to run when plaintiff discovered cancer, even though she had a lengthy history of other, related health problems). Indeed, even in *Angle*, 42 So. 3d at 7, despite the plaintiff's fifteen-year history of related health problems and other diagnoses, this Court held that the plaintiff's "cause of action accrued at the latest in 2001, *the date she was last diagnosed* with an injury or disease." (Emphasis added.)

¶36. In the present case, the jury was properly instructed on the discovery issue and found that McLemore could not have discovered his injury until October 2005. Because this question of fact was decided by the jury and that determination was not contrary to the weight of the evidence, we should not set aside the jury's decision, a decision which is afforded "great deference." *Johnson v. St. Dominic-Jackson Mem'l Hosp.*, 967 So. 2d 20, 23 (Miss. 2007). As I find no reversible error, I would affirm the judgment.

**GRAVES, P.J., JOINS THIS OPINION.**

15