COLEMAN, Justice,
dissenting:
¶ 76. It is my opinion that the chancellor applied an incorrect legal standard for discovery of an injury, and I would remand the case for the chancellor to apply the correct standard.
¶ 77. In the chancellor’s findings of fact, she concluded that the sinkhole was discovered in 2004. However, in the amended order and opinion, the chancellor explicitly found that Mrs. Carraway noticed the sinkhole in 2002. Addressing the statute of limitations issue, the chancellor concluded that the Carraways’ claim was not time barred when the suit was filed in 2006, because the three-year limitations period began to run in 2004. Alternatively, the chancellor opined that, even if the Carra-ways knew of the sinkhole before 2004, the continuing tort doctrine applied and saved the claim from the three-year statute of limitations.
¶ 78. The application of a statute of limitations is a question of law that is reviewed de novo. Sarris v. Smith, 782 So.2d 721, 723 (¶ 6) (Miss.2001). We employ a limited standard of review to a chancellor’s findings of fact, and the chancellor’s decision will be affirmed if supported by substantial credible evidence “unless the chancellor abused his discretion, applied an erroneous legal standard, was manifestly wrong, or was clearly erroneous.” Williams v. Williams, 843 So.2d 720, 722 (¶ 10) (Miss.2003). It is my opinion that the chancellor applied the wrong legal standard in determining when the *595 Carraways discovered the sinkhole. Accordingly, the case should be reversed and remanded to require the application of the correct legal standard.
A. Discovery Rule
¶ 79. The claims in the instant case are subject to the general, three-year statute of limitations found in Mississippi Code Section 15-1-49, which provides, in relevant part:
(1) All actions for which no other period of limitation is prescribed shall be commenced within three (3) years next after the cause of action accrued, and not after.
(2) In actions for which no other period of limitation is prescribed and which involve latent injury or disease, the cause of action does not accrue until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury.
Miss.Code Ann. § 15-1-49(1), (2) (Rev. 2003). Subsection (2) provides an exception for latent injuries, providing that the three-year statute of limitations does not begin to run until a person “can reasonably be held to have knowledge of the injury or disease.” PPG Architectural Finishes, Inc. v. Lowery, 909 So.2d 47, 50 (¶ 9) (Miss.2005) (quoting Owens-Illinois, Inc. v. Edwards, 573 So.2d 704, 709 (Miss.1990)).
¶ 80. The Court has defined a latent injury “as one where the plaintiff will be precluded from discovering harm or injury because of the secretive or inherently un-discoverable nature of the wrongdoing in question ... [or] when it is unrealistic to expect a layman to perceive the injury at the time of the wrongful act.” PPG, 909 So.2d at 50 (¶ 12) (quoting Donald v. Amoco Prod. Co., 735 So.2d 161, 168 (Miss.1999)). “For an injury to be latent it must be undiscoverable by reasonable methods.” PPG, 909 So.2d at 51 (¶ 14) (citing Donald, 735 So.2d at 168). “[T]o benefit from the discovery rule, a plaintiff must be reasonably diligent in investigating her injuries.” Wright v. Quesnel, 876 So.2d 362, 366 (¶ 10) (Miss.2004) (citing Wayne Gen. Hosp. v. Hayes, 868 So.2d 997, 1001 (¶ 15) (Miss.2004)). “The intent of the discovery rule is to protect potential plaintiffs who cannot, through reasonable diligence, discover injuries done to them.” Wright, 876 So.2d at 367 (¶ 13) (quoting Wayne Gen. Hosp., 868 So.2d at 1001 (¶ 16)).
¶ 81. Applying Mississippi Code Section 15-1-49, the Court has held that “the cause of action accrue[s] upon discovery of the injury, not discovery of the injury and its cause.” Angle v. Koppers, Inc., 42 So.3d 1, 5 (¶ 9) (Miss.2010); Lincoln Elec. Co. v. McLemore, 54 So.3d 833, 836 (¶ 16) (Miss.2010). It is a different standard than that applied in medical malpractice cases, the limitations of which are controlled by a different statute. See Miss. Code Ann. § 15-1-36 (Rev.2003). In medical malpractice cases, a cause of action accrues and the statute of limitations begins to run “when the patient can reasonably be held to have knowledge of the injury itself, the cause of the injury, and the causative relationship between the injury and the conduct of the medical practitioner.” Smith v. Sanders, 485 So.2d 1051, 1052-53 (Miss.1986). See also Huss v. Gayden, 991 So.2d 162, 165 (¶ 15) (Miss.2008); Barnes v. Singing River Hosp. Sys., 733 So.2d 199, 206 (¶ 20) (Miss.1999). In Angle, the Court explained the difference:
As noted by this Court, “[n]ot all discovery rules are created equal. In analyzing what the plaintiff must discover in order to trigger the running of the statute of limitations, we ordinarily are guided by the wording of a statute’s discovery provision.” Caves v. Yar- *596 brough, 991 So.2d 142, 154-55 (Miss.2008) (in “comparing the discovery rules in the medical-malpractice statute and the ‘catch-all’ statute, we have one which focuses on discovery of the date of the wrongful conduct, and another which focuses on the date of discovery of the injury or disease ”) (emphasis added). We find that the plain language of the statute supports Defendants’ argument that the cause of action accrued upon discovery of the injury, not discovery of the injury and its cause. While not always a model of consistency, our case-law supports this plain reading of the statute.
[[Image here]]
Section 15-1-49(2) provides a discovery rule that delays the accrual of the cause of action until the plaintiff discovers or with reasonable diligence should have discovered a latent injury or disease. Miss.Code Ann. § 15-1-49(2) (Rev.2003). As we have said, a “cause of action accrues only when it comes into existence as an enforceable claim; that is, when the right to sue becomes vested[.]” Owens-Illinois, Inc. v. Edwards, 573 So.2d 704, 706 (Miss.1990).... No provision of Section 15-1-49 provides that a plaintiff must have knowledge of the cause of the injury before the cause of action accrues, initiating the running of the statute of limitations.
Angle, 42 So.3d at 5-7 (¶¶ 9, 18).
¶ 82. In the instant case, it appears that the chancellor applied the standard most often used in medical malpractice cases, as she acknowledged that Mrs. Carraway knew of the sinkhole in 2002, but held that at that time Mrs. Carraway had “no true and real knowledge of the origin or causation of the sinkhole.” As stated in Lincoln Electric, “knowledge of the cause of an injury is irrelevant to the analysis [under Section 15-1-49]. The inquiry is when the party knew or should have known of an injury.” Lincoln Elec., 54 So.3d at 838 (¶ 23) (citing Angle, 42 So.3d at 5 (¶ 9)).
¶83. The chancellor and the majority here acknowledged that in the late 1990s Kirk Carraway notified the Carraways of “severe erosion problems around the outlet end of the culvert pipe.” (Maj.Op.lHi 8, 25.) In her order and opinion, the chancellor wrote that Kirk Carraway spoke with the Carraways “and warned them that the erosion would get worse and that someone should have a look at the erosion issue.” The chancellor also cited testimony from two City workers who testified that Mrs. Carraway told them in 2002 about erosion, at the very least, and possibly even showed them a sinkhole.
¶ 84. The chancellor seemingly relied on the standard of an injury being too complex for a layperson to discover in holding that, although Mrs. Carraway knew of the sinkhole in 2002, she had “no true and real knowledge of the origin or causation of the sinkhole” because “[w]a-ter flow and flood currents are subjects requiring expert knowledge to fully comprehend.” [11] The chancellor incorrectly *597 focused on Mrs. Carraway’s need to understand “the origin or causation of the sinkhole.” I do not dispute that an expert may be required to fully comprehend issues and problems related to water flow and flood currents, but under Section 15-1-49, Mrs. Carraway is not charged with understanding the cause of the injury; she is charged only with awareness or knowledge of the injury itself.
¶ 85. Furthermore, I remain unconvinced by the majority’s attempt to ignore the chancellor’s finding that Mrs. Carra-way knew of the sinkhole in 2002. The chancellor wrote, “At the time Mrs. Carra-way noticed the sinkhole in the summer of 2002, she had at that time no true and real knowledge of the origin or causation of the sinkhole.” (Emphasis added.) The chancellor’s chosen verbiage directly belies the majority’s contention that the chancellor found that Mrs. Carraway did not know of the sinkhole until 2004. In fact, the chancellor explicitly writes that Mrs. Carraway did notice the sinkhole in 2002. On the other hand, the language from the chancellor’s opinion upon which the majority relies, that “even if it is presumed that Mrs. Carraway discovered the sinkhole in June 2002,” comes from a portion of the opinion in which the chancellor is discussing the continuing tort doctrine, well after she refused to use 2002 as the start date for the running of the limitations period because Mrs. Carraway had no knowledge of causation. It does nothing to take away from the chancellor’s finding — quoted above— that Mrs. Carraway noticed the sinkhole in 2002. The latter quote, upon which the majority relies, makes no less sense in the context of the chancellor rejecting 2002 as the start date due to Mrs. Carraway’s lack of knowledge of causation than in the context of rejecting it because Mrs. Carraway did not, in fact, have knowledge of the sinkhole itself. In light of the chancellor’s explicit finding that Mrs. Carraway knew of the sinkhole but not its cause in 2002, I believe the former interpretation is the accurate one.
¶ 86. I agree with the Angle Court that our caselaw on the application of the discovery rule is “not always a model of consistency.” Angle, 42 So.3d at 5 (¶ 9). However, our caselaw clearly “supports [a] plain reading of the statute.” Id. Under the plain language of Section 15-1-49(2), a cause of action accrues and the statute of limitations begins to run at the time the plaintiff discovers, or by reasonable diligence should have discovered, the injury. Angle, 42 So.3d at 5 (¶ 9); Lincoln Elec., 54 So.3d at 836 (¶ 15). I recommend that this Court fully adopt this rule and overrule any cases that provide a contrary position.
¶ 87. Because the chancellor chose 2004 as the date on which the limitations period began to run on the basis that Mrs. Carra-way could not have known of the cause of the injury before that time, I believe not that she committed manifest error but that she applied the wrong legal standard, which is also grounds for reversal. In reaching its holding today, the majority continues this Court’s tradition — bemoaned by the Angle Court — of muddying the law applicable to statutes of limitations in Mississippi. Trial court judges, attorneys, and litigants deserve clear, consistent guidance regarding the application of our various statutes of limitations, and in passing on the trial court’s error today we take a regrettable step away from providing it.
*598 B. Continuing Tort Doctrine
¶ 88. The chancellor included an alternative position that, even if the sinkhole was discovered prior to 2004, the continuing tort doctrine applied to preclude the running of the statute of limitations. I disagree. The Court has defined the continuing tort doctrine as follows:
[W]here a tort involves a continuing or repeated injury, the cause of action accrues at, and limitations begin to run from, the date of the last injury, or when the tortious acts cease. Where the tor-tious act has been completed, or the tortious acts have ceased, the period of limitations will not be extended on the ground of a continuing wrong.
A “continuing tort” is one inflicted over a period of time; it involves a wrongful conduct that is repeated until desisted, and each day creates a separate cause of action. A continuing tort sufficient to toll a statute of limitations is occasioned by continual unlawful acts, not by continual ill effects from an original violation.
Estate of Fedrick ex rel. Sykes v. Quorum Health Res., Inc., 45 So.3d 641, 643 (¶ 8) (Miss.2010) (quoting Pierce v. Cook, 992 So.2d 612, 619 (¶ 25) (Miss.2008)). The Court has explained further that, while “continuing or repeated injuries can give rise to liability even if they persist outside the time period for the initial injury[,] ... the defendant must commit repeated acts of wrongful conduct.” Pierce, 992 So.2d at 619 (¶ 25) (quoting Smith v. Franklin Custodian Funds, Inc., 726 So.2d 144, 148-49 (Miss.1998)).
¶ 89. The chancellor cited the correct rules of law pertaining to continuing torts, then concluded simply, “Therefore, the [cjourt finds that every time it rains in Mrs. Carraway’s backyard, the tort in this case continues. Accordingly, the [cjourt finds that the statute of limitations has not run on the causes of action in this case and a continuing tort does exist in this matter.” This is not a correct application of the continuing tort doctrine. Rain is not a tort. The continuing tort doctrine requires “repeated acts of wrongful conduct” by the defendant. Pierce, 992 So.2d at 619 (¶ 25). There are no “repeated acts” here that would trigger the continuing tort doctrine.
¶ 90. Because the chancellor applied an incorrect standard for discovery of an injury, and because the continuing tort doctrine does not apply, I would remand for the chancellor to apply the correct legal standard, and I respectfully dissent.
DICKINSON, P.J., JOINS THIS OPINION.

. The chancellor was correct that this Court has held that "[w]ater flow and flood currents are subjects requiring expert knowledge to fully comprehend.” Punzo v. Jackson County, 861 So.2d 340, 346 (¶ 21) (Miss.2003). However, Punzo was brought under the Mississippi Tort Claims Act, and a different statute applied. Further, the facts in that case are not entirely analogous to the case at hand, because it involved multiple instances of flooding that occurred over a span of several years. The case sub judice does not present a situation where several independent acts occurred over several years. The damage to the Carraways' property involved an open and obvious injury — severe erosion — that was present continuously from the late 1990s until it eventually caused a sinkhole. The chancellor stated repeatedly throughout her order and opinion that it was evident that the sink *597 hole was the result of long-term, ongoing erosion, which was worsened by the City’s work in 2002.