KITCHENS, JUSTICE,'
DISSENTING:
¶51. I respectfully dissent. In holding that Rankin’s entire claim is time barred, the majority wields a club when a scalpel is appropriate. While I agree that this case must be reversed on statute of limitations' grounds, I would remand for a new trial. Although these two statements may seem, at first blush, to be mutually exclusive, in this instance they are not. The majority finds that Rankin’s 2007 COPD diagnosis, as a matter of law, started the running of the' statute of limitations on his silicosis claim. But that conclusion is not supported by the case law the majority cites or by the medical testimony adduced at the trial. This is a silicosis claim, not a COPD claim. While CQPD indeed is a lung condition, there was a complete absence of evidence that the COPD diagnosis should have informed Rankin of the presence of silicosis, which was the specific lung injury for which Rankin sought recovery. Our case law dictates that, under the circumstances, the question of when Rankin knew or should have known of his silica-induced injury was a jury issue. Because Rankin’s COPD was diagnosed outside the limita *1075 tions period, he was not entitled to recover damages for COPD, and I would reverse and remand for a new trial.
¶52. The three-year statute of limitations applicable to Rankin’s action is found in Mississippi Code Section 15-1-49(2). The statute provides that, “[i]n actions for which no other period of limitation is prescribed and which involve latent injury or disease, the cause of action does not accrue until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury.” Miss. Code Ann. § 15-1-49(2) (Rev. 2012). A latent injury is one that is “undiscoverable by reasonable methods.” PPG Architectural Finishes, Inc. v. Lowery, 909 So.2d 47, 51 (Miss. 2005). According to this Court’s decision in Angle v. Koppers, 42 So.3d 1, 5 (Miss. 2010), a cause of action for a latent injury or 'disease accrues when the plaintiff discovers the injury. This Court thus decided that the plain language of Section 15—1— 49(2) means “that the cause of action accrued upon discovery of the injury, not discovery of the injury and its cause.” Id. (emphasis in original).[13]
¶53. The determination of when the plaintiff “discovered, or by reasonable diligence should have discovered, the injury” is a • fact-intensive inquiry, focusing oh what the plaintiff knew and when. “Because there is no bright line rule, the specific facts of the case will determine whether the plaintiff knew or reasonably] should have known that an injury existed.” Lowery, 909 So.2d at 51. This Court has' observed that an individuals seeking of medical attention for side effects or symptoms may show knowledge of an injury, although other persons may not discover an injury until they review pertinent medical records. Id. Others may discover an injury through personal observation or experience. Id. One’s receipt of. medical treatment for an injury also may trigger the running of the limitations period. Id. When a genuine dispute exists, discovery of an injury is a question of fact for the jury. Weathers v. Metropolitan Life Ins. Co., 14 So.3d 688, 692 (Miss. 2009) (quoting Donald v. Amoco Prod. Co., 735 So.2d 161, 167 (Miss. 1999)).
¶54. Rankin suffered from a multitude of medical conditions, including congestive heart disease, coronary artery disease, diabetes, dementia, seizure disorders, and multiple strokes. He developed breathing problems in' 2000, and in 2007 he was diagnosed with exacerbation of COPD, Dr. Obie McNair testified that “[t]hree types of major disease'processes come under the heading of COPD: emphysema, chronic bronchitis, and asthma.” Dr. McNair testified that Rankin had a history of emphysema, “which is a form- of COPD,” and he thought Rankin’s COPD possibly was caused by silicosis, because he could find no other cause. Dr. Malcolm Taylor, a defense expert, testified that COPD is a condition that encompasses “a lot of different lung diseases,” and had numerous possible causes, such as childhood asthma or multiple infections. He testified that it is uncommon for silicosis to cause COPD.
¶55. Dr. Steven Haber testified that silicosis is a form of pneumoconiosis, which is a' dust disease of the lungs caused' by inhaling particles that scar the lung. He testified that silicosis results when scar tissue, also known as fibrosis, develops in *1076 the lung tissues after the inhalation of silica. All experts agreed that a diagnosis of silicosis requires four criteria: (1) imaging, such as an x-ray, showing the scar tissue; (2) a history of exposure to silica; (3) a sufficient latency period; and (4) no other explanation for the presence of scar tissue. On January 19, 2010, Rankin had a chest x-ray that, according to the radiologist’s note, showed “pulmonary fibrotic pathology.” No reason for the x-ray appears in the record, and no accompanying physician’s note or other evidence shows that this information ever was communicated to Rankin. This chest x-ray was one of forty-two chest x-rays admitted in evidence. Dr. McNair testified to the existence of thousands of pages of medical records on Rankin, and defense expert Dr. Desmondes Haynes testified that he had reviewed several banker’s boxes of medical records on Rankin.
¶56. On October 22, 2012, Dr. Haber performed a B-reading of a more recent chest x-ray and found the x-ray to be consistent with silicosis. On May 13, 2013, Rankin filed a complaint alleging that he suffered of “lung disease and silica related conditions, caused by exposure to respira-ble crystalline silica.” Later, on January 14, 2014, Dr. Haber diagnosed Rankin with silicosis. During closing arguments, Rankin argued that he did not know he had a silica-induced injury until he had the Breading and diagnosis. Although the defense argued that Rankin’s 2007 COPD diagnosis started the limitations period, the jury found for Rankin.
¶57. The majority finds that the trial court erred by submitting the statute of limitations issue to the jury because the 2007 COPD diagnosis began the running of the statute of limitations as a matter of law. I disagree. The case law cited by the majority does not support its conclusion. In Angle v. Koppers, 42 So.3d 1, 2 (Miss. 2010), the plaintiff sued a wood-treatment plant and other defendants in 2006 for numerous injuries caused by her exposure to toxic chemicals. Angle had been diagnosed with her last injury five years before filing the complaint. Id. at 3. She argued that the statute of limitations did not begin to run until she knew the cause of her injuries. Id. at 4. This Court rejected that argument, finding that her cause of action had accrued when she had discovered the injury itself, not the injury and its cause. Id. at 5 (citing Miss. Code Ann. § 15-1-49(2)). The Court held that, because Angle’s claims had accrued, at the latest, when she had been diagnosed with her last disease five years before filing the complaint, her claim was time barred. Id. at 7.
¶58. In Lincoln Electric Co. v. McLemore, 54 So.3d 833, 833-34 (Miss. 2010), McLemore sued manufacturers of welding rods, alleging that his exposure to harmful fumes from welding had caused his diagnosis of a neurological disease known as manganism. On September 3, 2002, McLe-more had been informed by a physician that he had Parkinsonism or Parkinsonism syndrome, and that his condition could have been related to welding. Id. at 834. McLemore then sought legal advice. Id. In December 2002, he was advised by a physician to discontinue welding. Id. From 2004 through 2006, McLemore filed several lawsuits claiming neurological injury from exposure to welding products. Id. at 835. In October 2005, he was diagnosed with man-ganism, and, on November 14, 2005, he filed his complaint seeking recovery specifically for manganism. Id. This Court held that McLemore had known of his injury on September 3, 2002. Id. at 838. This was because, on that date, McLemore had been diagnosed with Parkinsonism or Parkin-sonism syndrome related to welding, which prompted him to seek legal advice and to file lawsuits alleging neurological injury from exposure to manganese products. Id.
*1077 ¶59. But in Phillips 66 Co. v. Lofton, 94 So.3d 1051, 1059 (Miss. 2012), the Court held that Lofton’s asbestosis claim, filed May 19, 2004, was not time barred, despite the facts that, in 1995, Lofton had experienced shortness of breath and both a 1995 CT scan and a 1996 x-ray had shown pulmonary fibrosis. As in this case, Lofton definitively was diagnosed with the injury after he had filed' suit, in 2010. We held that, although as early as 1995 Lofton had shortness of breath and a CT scan had shown pulmonary fibrosis, Lofton reasonably could not have discovered the asbestosis in 1995 or 1996 because then he had been seeking medical treatment for conditions unrelated to his lungs. Id. And a physician had testified that fibrosis in the lungs has many causes and is not always associated with asbestosis. Id. We held that Lofton reasonably could not have known of his asbestosis injury until he was notified of the pulmonary fibrosis when he sought treatment in September 2003 for asbestosis symptoms: Id. For these reasons, this Court held that the question of discovery was for the jury. Id. at 1059-60.
¶60. The majority also relies on a pair of unpublished federal district court opinions applying Mississippi law to -this issue. Federal court decisions are not binding upon this Court and are merely persuasive. Corban v. United Servs. Auto. Ass’n, 20 So.3d 601, 611 n.15 (Miss. 2009). But because the majority relies heavily upon these cases, I address them. In Langston v. Pangborn Corp., 2014 WL 347718 (S.D. Miss. Jan. 31, 2014) (not reported), Langston filed suit on May 14, 2012, against various defendants alleging “lung disease and silica related conditions” from silica exposure. Id. at *1. Langston argued that the limitations period did not start running until he was diagnosed with silicosis after he had filed the complaint. Id. at *2. But Langston had sought treatment for emphysema and COPD beginning in 2001, and 2005 x-rays showed pulmonary fibrotic scarring. Id. at *3. Langston testified that, in 2007, he researched silicosis and discovered it was caused by the inhalation of silica dust. Id. First, the district court held that the limitations period had begun to run soine time prior to Langston’s formal silicosis diagnosis; obviously, Langston had known of his injury because it had prompted him to file suit. Id. at *5. Second, the district court determined that the statute of limitations had expired before Langston had filed his suit. Id. at *6. The district court found that Langston knew or should have known of his injury prior to May 14, 2009, because, more than three years before the lawsuit, he had pulmonary problems related to silicosis, he had been diagnosed with numerous pulmonary conditions, he had researched silicosis, and no definitive expert diagnosis is necessary to commence the running of the statute of limitations. Id. at **5-6.
¶61. Langston seems to imply that a plaintiffs diagnosis with any physical problem even tangentially related to silicosis might commence the running of the statute of limitations on a silicosis claim. If that were the law, then Rankin’s COPD diagnosis, later related by Dr. McNair to his silicosis, would have commenced the running of the statute of limitations. But as previously discussed, Langston, a federal case, is not binding on this Court. Moreover, the federal district judge who authored Langston distinguished it in the other unpublished opinion cited by the majority, Bryant v. 3M Company, 2014 WL 2761553 (S.D. Miss. June 18, 2014) (not reported). As the majority astutely recognizes, the facts of Bryant and the facts of this case are practically, identical.
¶62. Bryant filed his complaint against certain respiratory equipment manufacturers on April 9, 2013, alleging “lung disease and silica related conditions.” Id. at *1. Medical records showed that Bryant’s *1078 breathing problems began in 1991. Id. at *2. He was diagnosed with severe COPD and emphysema in 2000. Id. In April 2005, chest x-rays showed prominent interstitial markings that, the radiologist stated “could be chronic fibrotic type changes,” but it was “unclear.” Id. In 2007, a radiologist found prominent .markings in Bryant’s lungs. Id. After 2007, Bryant’s breathing problems worsened, and he began oxygen treatment in 2008. Id.
¶63. Faced with this set of facts, the district court allowed Bryant to proceed with his claims for “silicosis/pulmonary fibrosis,” finding that a genuine issue of material -fact existed' as to whether these claims had been brought within 'the limitations period. Id. at *4. But the district court found that Bryant’s claims for “COPD, emphysema, shortness of breath, wheezing, and any other injury or medical condition diagnosed before April 9, 2010” were time barred. Id. The district court discussed Lofton’s holding that, despite the fact that Lofton had experienced lung symptoms and had exhibited scarring on his lungs for years before filing suit,-Lof-ton’s “claim did not accrue until he received a diagnosis of pulmonary fibrosis.” Id. at ⅜3. And the district court distinguished Langston because, in that case, the plaintiff had been diagnosed with .pulmonary fibrosis seven years before filing suit and had researched silicosis for five years before filing suit. Id. The district court also found MoLemore to be distinguishable because, in McLemore, the plaintiff had been informed of the connection between his symptoms and welding and had. sought legal advice years before filing the lawsuit at issue. Id.
¶64. In Bryant, the district court rejected the notion that the mere appearance of some symptom, such as COPD, that later is linked to silicosis commences the running of the statute of limitations on the silicosis claim. Id. at *4. Rather, the dis-
trict court held, a diagnosis of a such a symptom starts the running of the limitations period as to that injury. Id. The plaintiff still may recover for silicosis if the claim is brought within three years of the date the plaintiff knew or should have known of the silicosis. Id. And Bryant recognized this Court’s holding in Lofton that a radiologist’s identification of pulmonary fibrotic scarring on an x-ray does not commence the statute of limitations, unless the plaintiff has some awareness of that finding. Id. at *3 (citing Lofton, 94 So.3d at 1059). In Lofton, the plaintiff was unaware of the finding of pulmonary fibrotic scarring because the plaintiff had sought treatment for unrelated medical conditions. Lofton, 94 So.3d at 1059. And in Bryant, the plaintiff was not charged with knowledge of pulmonary fibrotic scarring because the radiologist had stated that its presence was “unclear.” Bryant, 2014 WL 2761553, at *3.
¶65. The medical evidence in this case established that pulmonary fibrosis, or scarring of the lung tissue, is the physical finding that attends a diagnosis of silicosis. The cases discussed above provide that, before a court can hold, as a matter of law, that a plaintiff knew or should have known of a silicosis injury, the plaintiff must have had some reasonable awareness of a finding of pulmonary fibrosis or of some other unambiguous indicator of silicosis. Under Lofton and Bryant, merely seeking treatment for some physical condition later linked to silicosis is- not enough. Bryant held that seeking treatment for COPD outside the three-year limitations period merely bars the. plaintiffs recovery for COPD. As the medical evidence in this case, discussed above, demonstrates, COPD and silicosis are vastly different injuries of the lung, and a diagnosis of COPD is not indicative of the presence of silicosis. Thus, without more, a plaintiff diagnosed with the lung injury, COPD, should not be charged with automatic *1079 knowledge of the very different lung.injury, silicosis.
¶66. In this case, Rankin received a COPD diagnosis in 2007. Applying Bryant and Angle, his claim for recovery for COPD is time barred, because Rankin had three years from the date of the COPD diagnosis to commence an action to recover for that injury. Under the same logic, Rankin cannot recover for any other injury or medical condition diagnosed before May 13, 2010, because those claims also are time barred as a matter of law. But a jury question undoubtedly existed on Rankin’s claim for silicosis. While a radiologist’s note on a chest x-ray dated January 19, 2010, identified “pulmonary fibrotic pathology,” no evidence existed that Rankin had sought treatment for silicosis or pulmonary fibrotic pathology on that date, or that the contents of the radiologist’s note were communicated to Rankin on that date. See Lofton, 94 So.3d at 1059. Rankin presented evidence that he first knew or should have known of his pulmonary fibrosis when he received the B-reading from Dr. Haber in 2012. Thus, under Lofton, the question of whether he knew or should have known of his silicosis injury prior to May 13,2010, was for the jury.
¶67. As this Court has held, determining when the plaintiff knew or should have known of an injury is a fact-intensive inquiry. In this case, a correct application of the case law to the facts yields the conclusion that a genuine dispute existed on the issue of when Rankin knew or should have known of his silicosis. However, Rankin’s claims for any other medical conditions diagnosed prior to May 10, 2010, are time barred. Therefore, I would reverse and remand for a new trial.
KING, J., JOINS THIS OPINION.

, While I have expressed strong disagreement with-this Court's holding that a claim can accrue when the plaintiff knows of an injury but not its cause; for the purposes of my analysis today, I apply the test from Angle, since it is the relevant precedent of this Court, See City of Tupelo v. Patterson, 208 So.3d 556, 574 (Miss. 2017) (Kitchens, J., dissenting); Lincoln Electric Co. v. McLemore, 54 So.3d 833, 840 (Miss. 2010) (Kitchens, J., dissenting); Angle, 42 So.3d at 9 (Kitchens, J., dissenting).