# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2015-CA-01066-SCT

*AMERICAN OPTICAL CORPORATION*

*v.*

*ESTATE OF ROBERT LEE RANKIN, SR., JEAN
MARIE HOWARD RANKIN, JACQUELYN
DENISE RANKIN ANDERSON, AND ROBERT
LEE RANKIN, JR., INDIVIDUALLY AND ON
BEHALF OF ALL THE HEIRS AT LAW OF
ROBERT LEE RANKIN, SR., DECEASED*


| | |
|---|---|
| DATE OF JUDGMENT: | 02/24/2015 |
| TRIAL JUDGE: | HON. LAMAR PICKARD |
| COURT FROM WHICH APPEALED: | JEFFERSON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | MICHAEL JAMES BENTLEY |
| | SIMON TURNER BAILEY |
| | W. WAYNE DRINKWATER, JR. |
| | WALTER T. JOHNSON |
| | JOSEPH GEORGE BALADI |
| | COREY DONALD HINSHAW |
| | JOHN BURLEY HOWELL, III |
| ATTORNEYS FOR APPELLEES: | DAVID NEIL McCARTY |
| | ROBERT ALLEN SMITH, JR. |
| | TIMOTHY W. PORTER |
| | PATRICK MALOUF |
| | JOHN TIMOTHY GIVENS |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND RENDERED - 05/18/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |


**EN BANC.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1.    On May 13, 2013, a former construction worker, Robert Lee Rankin Sr., filed a complaint in Jefferson County Circuit Court against American Optical Corporation (AO) alleging an injury of "lung disease and silica related conditions caused by exposure to respirable crystalline silica" while using defective respirators[1] manufactured by AO. Following trial on February 17-24, 2015, the jury returned a total verdict of $14 million in favor of Rankin.[2]

¶2.    According to the verdict form, the jury found by a preponderance of the evidence that (1) Rankin had a "silica-induced lung condition;" (2) Rankin did not know nor should he have known before May 13, 2010, that he had the "lung injury" that he alleged in the lawsuit; (3) Rankin used a respirator manufactured or sold by AO "while working in harmful concentrations of silica;" (4) there was a defect in the design of an AO product that proximately caused Rankin's silica-induced lung condition; and (5) there was a defect in the warning of an AO product that proximately caused Rankin's silica-induced lung condition.

¶3.    The jury awarded $4 million in noneconomic damages and $10 million in economic damages. The jury assigned 45% of fault to AO and 55% to "Other Named and Unnamed Defendants and/or Parties."[3]  The trial court entered a total judgment against AO of $6.3 million, reflecting the jury's apportionment of fault. AO filed a motion to amend the

---

[1]  The terms "respirator" and "mask" are used interchangeably in the record.

[2]  Rankin died after the conclusion of the trial on March 10, 2015.

[3]  Rankin named twenty other defendants, including manufacturers of respiratory equipment, sand, and silica related equipment, that he claimed also were responsible for his injuries. All other defendants were dismissed prior to trial and are not parties to the instant appeal.

judgment and a motion for a judgment notwithstanding the verdict (JNOV) or, alternatively, for a new trial. The trial court granted AO's motion to amend the judgment in part and amended the noneconomic damages award from $1.8 million to $1 million to comply with the statutory cap on noneconomic damages. However, the trial court denied AO's motion for a JNOV or, alternatively, for a new trial.

¶4. AO appeals, raising the following seven issues, restated for clarity:

    **I.**     **Whether Rankin's claims are barred by the three-year statute of limitations.**

    **II.**     **Whether Rankin proved that the design of the AO respirators proximately caused his injury and that there was a feasible design alternative.**

    **III.**     **Whether AO is entitled to judgment as a matter of law on Rankin's failure to warn claim.**

    **IV.**     **Whether Rankin proved that his use of an AO respirator proximately caused his injuries.**

    **V.**     **Whether Rankin proved a reasonable basis for the allegation that his alleged damages were caused by silica exposure.**

    **VI.**     **Whether AO was deprived of its right to a fair trial in an impartial forum.**

    **VII.**     **Whether the $14 million verdict was against the overwhelming weight of the evidence.**

¶5. It is necessary for the Court to address only the first issue raised.

**FACTUAL BACKGROUND**

¶6.    AO manufactured and sold respiratory protection products, including the model 1050 and 1010 respirators or masks, which were introduced in 1976 and 1985 respectively.[4] The 1050 and 1010 were single use, disposable respirators designed to protect individuals against pneumoconiosis and fibrosis producing dusts such as silica.  Both AO respirators were marketed for use in textile, mining, quarrying, grinding, and rock crushing operations, but not in abrasive blasting operations.

¶7.    Rankin worked in the construction business for various employers and independently from approximately 1965 though 2001.  Rankin testified that he jackhammered and sandblasted during his career in the construction business.[5]  Rankin identified several different brands of respirators that he used throughout his career while he jackhammered and sandblasted.  Two of the respirators that Rankin used while he jackhammered and sandblasted were AO's 1050 and 1010.  Rankin could not recall how often or where he wore any specific respirator that he identified.  Rankin never saw any boxes, packaging, or paperwork that came with the respirators, nor did anyone teach him how to use the respirators.

¶8.    Larry Brown, Rankin's former coworker, testified that he worked with Rankin from 1980 to 1985.  Brown testified that he and Rankin performed carpentry, sandblasted, and jackhammered during the entire five year period that they worked together.  Brown testified

---

[4]  AO ceased manufacturing and selling respiratory protective equipment in 1990.

[5]  Rankin's deposition was taken at a nursing home where he was residing at that time.  A video of the deposition was shown to the jury at trial.

that there was "a lot of dust created" when they sandblasted and jackhammered concrete.[6]

Although Brown's testimony was inconsistent, Brown ultimately testified that Rankin wore an AO mask while jackhammering and sandblasting from 1980 through 1985.

¶9.    Rankin's "long and complicated medical history" was well documented at trial. Rankin first was diagnosed with silicosis, an occupational lung disease, on January 14, 2014, eight months after Rankin had filed his complaint in the present case.  Rankin also suffered from breathing problems since 2000; had a heart attack in 2001; underwent open heart surgery; had multiple strokes; had blood clots in his legs; suffered pulmonary emboli; had seizure disorders; had Type II diabetes; underwent leg amputation below the knee due to diabetes; had peripheral vascular disease; had high cholesterol; suffered from hypertension; had coronary artery disease; had congestive heart failure; had chronic obstructive pulmonary disease (COPD), a chronic lung disease; and suffered from pulmonary interstitial lung disease.

¶10.    Dr. Steven Haber, a physician board certified in internal and pulmonary medicine as well as a certified B-reader, testified on behalf of Rankin.  A B-reader is a physician certified by the National Institute for Occupational Safety and Health (NIOSH) to read x-rays for dust diseases of the lung such as silicosis and asbestosis.  Dr. Haber explained that silicosis is a type of pneumoconiosis or "dust disease of the lung" caused by inhaling crystalline silica. Dr. Haber testified four criteria are required before a diagnosis of silicosis can be made,

---

[6] Rankin's wife, Jean Rankin, testified that Rankin regularly would come home from work with clothes covered in dust and sand.  Jean testified that his clothes would be so dusty that she had to wash his clothes separately from those of the rest of the family.

5

which are: (1) an x-ray showing scar tissue; (2) a history of exposure to silica; (3) a latency period; and (4) a clinical evaluation to determine if there was another reason for the scar tissue.

¶11.    Dr. Haber testified that respirable silica may be generated during construction activities such as jackhammering and sandblasting. He said that disrupting or breaking up materials through jackhammering and sandblasting causes crystalline silica to become airborne in high concentrations. Dr. Haber testified that the inhalation of silica causes scar tissue or fibrosis to form in the interstitial or tissue part of the lung, which results in an incurable and progressive lung disease known as silicosis.

¶12.    On January 14, 2014, Dr. Haber personally interviewed and examined Rankin "regarding possible occupational lung disease." Dr. Haber took Rankin's occupational history and reviewed Rankin's medical records, including x-rays and CT scans, as well as deposition testimony of Rankin and his coworkers. Dr. Haber gave the following summary of Rankin's occupational history based on his interview with Rankin:

> [Rankin] was in the construction industry from about 1965 until 2001 when he left work. He had significant occupational exposures to silica dust. The sources of that silica dust was from sandblasting, jackhammering, construction work and being around others who were doing that sort of activity. He, over his like 35 years of work, had done about ten years or so of sandblasting. He worked around other sandblasting or jackhammering or doing activities that were producing silica dust. And that he would experience sand in the nose or the mouth while he's doing some of these activities and over man years, primarily from sandblasting and concrete work starting in the 1960s.

6

¶13.   On January 14, 2014, Dr. Haber diagnosed Rankin with chronic silicosis that was incurable and likely to progress.  Dr. Haber testified that, although Rankin's heart problems were not caused by silicosis, the heart problems were "exacerbated" by silicosis.[7]

¶14.   Dr. Obie McNair, a board certified internal medicine physician and former board certified pulmonolgist, also testified for Rankin.  Dr. McNair opined that Rankin's x-rays revealed "findings consistent with silicosis."  Dr. McNair testified that Rankin's COPD was caused by simple silicosis, by exclusion.  Dr. McNair based the conclusion on "articles [that] said that silic[a] exposure can also cause COPD."  Dr. McNair explained that he "deduced" that Rankin's COPD was "quite possibly related to his silica exposure."

¶15.   Dr. McNair testified that Rankin's diabetes, stroke, heart attack, peripheral vascular disease, seizure disorder, hypertension, high cholesterol, and heart failure were not caused by silica exposure.  Dr. McNair also testified that Rankin's medications for diabetes and cholesterol were not related to silica exposure.[8]  Dr. McNair was asked on cross examination

---

[7] Dr. Haber also prepared a report of his findings.  Dr. Haber stated in his report that Rankin spent "an estimated 10 years sandblasting bridges and buildings.  Dr. Haber determined that Rankin "often sandblasted on a daily basis" and "would routinely get sand in his nose and mouth."  Dr. Haber stated that Rankin had "done a lot of jackhammering of concrete and cement."  Dr. Haber stated that "Rankin has a history of COPD and interstitial lung disease from asbestosis."  Dr. Haber stated in his report that Rankin was a "lifelong nonsmoker, who had significant occupational silica exposures while working construction, primarily from the mid 1960s through the mid 1980s from sandblasting."  Furthermore, "[h]e also did jackhammering."  Dr. Haber concluded that Rankin had chronic simple silicosis. Dr. Haber opined that Rankin's COPD was "most likely related to occupational silica exposure given that he never smoked."

[8] Dr. McNair also testified that the following medications prescribed for Rankin were unrelated to silicosis: Lexapro, Norvasc, Depakene (seizure medication), Apresoline (high blood pressure medication), Patanol (eye drop), MiraLAX (stool softener), Colate (stool softener), Aplisol injection (unknown purpose), Tylenol, Robitussin, Simethicone.

whether Rankin's medication isordil had anything to do with silica exposure. In response, Dr. McNair mentioned a peer reviewed journal article (Liu Article) containing a study of 40,000 Chinese workers who were exposed to silica. Over the objection of AO's counsel, Dr. McNair testified that, according to the article, people who had low level exposure to silica were at an increased risk of dying from heart related complications.

¶16.    Dr. McNair testified that he did not know whether Rankin's silicosis would progress at all. Dr. McNair also testified that Rankin's life expectancy would be shortened due to the number of his medical problems. Dr. McNair also opined that Rankin's COPD and chronic silicosis contributed to or exacerbated Rankin's right-sided heart disease. Dr. McNair also testified that Rankin's left-sided heart disease is not attributable to COPD. When asked whether Rankin's left-sided heart disease was attributable to silicosis, Dr. McNair again mentioned that, according to the Liu article, people with exposure to silica had an increased risk of ischemic heart disease. Dr. McNair was asked whether Cozaar, a medication for congestive heart failure, was related to silica. Dr. McNair explained that silica could be indirectly related to congestive heart failure, according to the Liu article. Dr. McNair opined that damaged lungs generally affect the cardiovascular system.

¶17.    At the close of Rankin's case in chief, AO moved for a directed verdict, arguing that Rankin's claims are barred by the statute of limitations because Rankin knew he had a lung injury before May 13, 2010. The trial court denied the motion and AO proceeded with its case in chief. AO called Dr. Malcom Taylor, a cardiologist who treated Rankin in 2013, to the stand. Dr. Taylor testified that Rankin had left-sided heart disease and the right side of

8

his heart was normal. Although Dr. Taylor did not see any problem with Rankin's lungs, he referred Rankin to a pulmonologist at the request of Rankin's wife, Jean. Dr. Taylor testified that silicosis could lead to COPD, and silicosis could cause lung damage.

¶18. AO also called to the stand Dr. Demondes Haynes, a board certified pulmonary and critical care physician. Dr. Haynes opined that Rankin did not have silicosis or any occupational lung disease. Dr. Haynes opined that silicosis does not cause congestive heart failure or make congestive heart failure worse. Dr. Haynes testified that Rankin's x-rays dated January 19, 2010, and April 3, 2013, did not indicate silicosis. Dr. Haynes opined that Rankin did not have COPD. Dr. Haynes also opined that Rankin did not have lung disease or interstitial lung disease.

## STANDARD OF REVIEW

¶19. The Court applies a de novo standard of review to statutes of limitation. *Phillips 66 Co. v. Lofton*, 94 So. 3d 1051, 1059 (¶ 12) (Miss. 2012). Likewise, the Court reviews a trial court's decision to grant or deny a motion for a directed verdict de novo. *Moreno v. TLSL, Inc.*, 187 So. 3d 127, 129 (¶ 8) (Miss. 2016).

¶20. "A motion for a directed verdict challenges the legal sufficiency of the evidence; it asks if the plaintiff met the burden of going forward on the evidence." *Roop v. S. Pharm. Corp.*, 188 So. 3d 1179, 1184 (¶ 15) (Miss. 2016). "Th[e] Court will consider the evidence in the light most favorable to the appellee, giving that party the benefit of all favorable inference that may be reasonably drawn from the evidence." *Spotlite Skating Rink, Inc. v. Barnes ex rel. Barnes*, 988 So. 2d 364, 368 (¶ 10) (Miss. 2008). The Court will affirm the

denial of a motion for a directed verdict where there is substantial evidence to support the verdict; but we will reverse if the evidence, as applied to the elements of a party's case, is either so indisputable, or so deficient, that the necessity of a trier of fact has been obviated. *Hyundai Motor America v. Applewhite*, 53 So. 3d 749, 752-53 (¶¶ 9) (Miss. 2011).

## DISCUSSION

### I. Whether Rankin's claims are barred by the three-year statute of limitations.

¶21.    AO argues that the trial court erred by failing to grant its motion for a directed verdict because Rankin's claims are barred by the three-year statute of limitations.  AO contends that Rankin's claims accrued when he discovered his lung injury.  Specifically, AO argues Rankin's claims accrued when he was diagnosed with COPD in November 2007 or, at the latest, in January 2010 when his x-ray revealed "pulmonary fibrotic pathology."  Rankin contends that the timeliness of his complaint was a factual issue that was properly resolved by the jury.  The special verdict form posed the question,  "Do you find by a preponderance of the evidence that [Rankin] knew or should have known before May 13, 2010, that he had the lung injury alleged in this lawsuit?"  To this, the jury answered "No."  Rankin argues that "under the unique facts of this case, [he] invoked his right to file suit even though he had not yet received a full diagnosis–only a strong suspicion he was exhibiting signs of silicosis."

¶22.    Under Mississippi Code Section 15-1-49, a plaintiff's cause of action for a latent injury or disease accrues at the point at which he discovered, or by reasonable diligence should have discovered the injury.  Section 15-1-49 provides in relevant part:

10

(1) All actions for which no other period of limitation is prescribed shall be commenced within three (3) years next after the cause of such action accrued, and not after.

(2) In actions for which no other period of limitation is prescribed and which involve latent injury or disease, the cause of action does not accrue until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury.

Miss. Code Ann. § 15-1-49 (Rev. 2012).

¶23.    Causes of action accrue upon discovery of the injury, *not discovery of the injury and its cause*. ***Ridgway Lane & Assocs., Inc. v. Watson,*** 189 So. 3d 626, 629 (¶ 9) (Miss. 2016). Knowledge of the cause of the injury is irrelevant to the analysis; rather, the inquiry is when the plaintiff knew or should have known of an injury. ***Lincoln Elec. Co. v. McLemore***, 54 So. 3d 833, 838 (¶ 23) (Miss. 2010). In determining whether a plaintiff knew or reasonably should have known that he had an injury, the Court considers the actions taken by the plaintiff. ***Id***. at 837-38 (¶¶ 22-23). For example, "seeking medical attention for side effects or symptoms" may confirm that the plaintiff knew he was injured. ***PPG Architectural Finishes, Inc. v. Lowery***, 909 So. 2d 47, 51 (¶ 16) (Miss. 2005).

¶24.    The question of whether the statute of limitations is tolled by the discovery rule often turns on the factual determination of what the plaintiff knew and when. ***Peoples Bank of Biloxi v. McAdams***, 171 So. 3d 505, 509-10 (¶ 18) (Miss. 2015). The discovery of an injury is an issue of fact to be decided by a jury when there is a genuine dispute. ***Watson***, 189 So. 3d at 629 (¶ 9). Although occasionally, the question of whether the suit is barred by the statute of limitations is a question of fact for the jury, the question may be taken away from

11

the jury if reasonable minds could not differ as to the conclusion, as with other putative fact questions. *McAdams*, 171 So. 3d at 510 (¶ 9).

¶25. In the case *sub judice*, Rankin's wife testified that Rankin had breathing problems dating back to 2000. She explained that Rankin suffered from shortness of breath and at times could "hardly get his breath." On November 27, 2007, Rankin sought medical treatment at the emergency room of Natchez Regional Medical Center. He complained of shortness of breath, asthma, and other respiratory distress. Upon a physical examination, his breathing came in wheezes and rales, and he exhibited crackles in the lung bases. He was suffering from cardiomegaly (enlarged heart), had increased lung markings, and was coughing yellow sputum. He had a history of emphysema, congestive heart failure, and coronary artery disease, as well as a prior myocardial infarction (heart attack). He also had prior cardiac catheterization and bypass surgery in 2001. A prior stroke left him with right-sided weakness, and he also had a history of hypertension, diabetes, and hyperlipidemia.

¶26. Notably, both Rankin and his wife *discussed* his medical history, examination, results, diagnosis, and treatment plan with Dr. Barry Tillman. Dr. Tillman, in turn, *counseled* Rankin and his family regarding lab/radiological results, diagnosis, and need for follow-up. Rankin previously had suffered from symptoms similar to those exhibited on November 27, 2007. According to Dr. Tillman's report, Rankin was evaluated by the emergency room physicians and was diagnosed with exacerbation of chronic obstructive pulmonary disease, consistent with Dr. Tillman's clinical impression. Rankin was admitted to the emergency room as a result. A follow-up examination on November 30, 2007, showed that the "[g]eneral

12

appearance of [Rankin's] chest is essentially unchanged compared to previous 11/27/07. Technique of the chest is somewhat different but the lung fields are essentially unchanged. Cardiomegaly persists."

¶27. A close inspection of the medical records reveals that Rankin had knowledge of the injury to his lungs because he and his wife relayed his medical history to the medical staff of the Natchez Regional Medical Center on November 27, 2007. Dr. Tillman, in turn, counseled Rankin regarding his lab results, diagnosis, and treatment. Rankin certainly knew his own history of construction work, involving jackhammering and sandblasting, from approximately 1965-2001. Rankin argues that his claim did not begin to run until January 14, 2014—eight months *after* filing suit—when he was diagnosed with silicosis. The testimony of his own expert, Dr. Obie McNair, contravenes that argument. According to Dr. McNair, silicosis *caused* Rankin's COPD.

¶28. At trial, Dr. McNair testified that Rankin's COPD, a chronic lung disease, was caused by simple silicosis by exclusion. On February 4, 2008, Rankin went to the ER due to a "sudden onset of acute shortness of breath that was complicated with profound diaphoresis." He was diagnosed with acute shortness of breath, recent pulmonary embolism of extremity, coronary artery disease, and atherosclerotic cardiovascular disease. On July 17, 2009, a radiology report noted that Rankin had a "low probability of pulmonary embolic pathology." On January 19, 2010, Rankin underwent an x-ray at the Jefferson County Hospital, which revealed "pulmonary fibrotic pathology" or lung scarring disease. At trial, Dr. Haber testified that silicosis causes lung fibrosis or scarring.

13

¶29.    On an unknown date, Rankin's attorneys retained Dr. Haber to perform a B-reading of Rankin's x-rays.  On October 22, 2012, Dr. Haber performed a B-reading of a Rankin's x-ray dated August 10, 2012.  On October 23, 2012, Dr. Haber submitted a report to Rankin's attorney stating that his findings were "consistent with silicosis, assuming an adequate exposure history, sufficient latency, and exclusion of other more probable causes."  Dr. Haber also stated that no diagnosis was made or implied and recommended clinical correlation.

¶30.    On another unknown date, Rankin's attorneys arranged for him to undergo a physical and clinical evaluation by Dr. Haber "regarding possible occupational lung disease."  On January 14, 2014, Dr. Haber performed an examination of Rankin and completed a report of his findings and diagnosis.  The same day, which was eight months after Rankin had filed his complaint against AO, Dr. Haber diagnosed Rankin with chronic simple silicosis.

¶31.    Rankin filed his complaint against AO on May 13, 2013.  Rankin claimed that his injury was "lung disease and silica related conditions, caused by exposure to respirable crystalline silica."  Rankin also alleged that his "lungs and body were injured" and he had "premature disability" as a result of silica inhalation.  Rankin's complaint indicates that he already had been diagnosed with silicosis at the time he filed his complaint.  Rankin's complaint contained a section "DISCOVERY RULE," in which he alleged that he "suffers from an occupational illness which has a latency period," and his "occupational illness did not distinctly manifest itself until [he] *was diagnosed with silicosis*."[9]  However, Rankin's

___

[9]    The past-tense language in the complaint mirrors complaints in other silicosis lawsuits.  Two cases filed in federal district court contain identical alleged injuries in

14

position ultimately was that he was first diagnosed with silicosis on January 14, 2014, eight months after he filed his complaint.

¶32.	At trial, Rankin maintained the position that he was first diagnosed with silicosis on January 14, 2014, by his retained expert pulmonologist, Dr. Haber.  AO did not dispute the diagnosis date of January 14, 2014; AO's position at trial was that Rankin did not have silicosis at all.  There is no dispute [Rankin] has never been diagnosed with silicosis or any other occupational lung injury by any of his treating physicians.[10]

¶33.	At trial, in response to AO's motion for a directed verdict, Rankin's counsel argued that Rankin had filed within the statute of limitations because "Mr. Rankin was not diagnosed until -- I mean, was not diagnosed with silicosis until three years prior to him filing a suit."  Rankin argued in its written response to AO's post trial motion: "In cases involving latent injury such as silicosis, the claim *only* arises once the Plaintiff is diagnosed with the disease."

¶34.	A summary of the foregoing pertinent dates to the statue of limitations issue is provided by the Court:

| | |
|---|---|
| 2000 | Rankin began having breathing problems. |

complaints against respiratory equipment manufacturers brought by the same attorneys. *See* ***Bryant v. 3M Co.***, 2014 WL 2761553 (S.D. Miss. June 18, 2014); ***Langston v. Pangborn Corp***., 2014 WL 347718 (S.D. Miss. Jan. 31, 2014).  Namely, in ***Bryant*** and ***Langston***, the plaintiffs, who had not been diagnosed with silicosis at the time they filed their complaints, alleged their injury was "lung disease and silica related conditions" and injury to their "lungs and body."

[10] Dr. Haber specifically stated in his October 23, 2012, report that, although Rankin's x-ray revealed findings consistent with silicosis, "[n]o diagnosis is made or implied."

| | |
|---|---|
| November 27, 2007 | Rankin was diagnosed with exacerbation of COPD. |
| January 2010 | Rankin's x-ray revealed "pulmonary fibrotic pathology" or lung scarring disease. |
| October 22, 2012 | Dr. Haber performed a B-reading of Rankin's x-ray, revealing findings consistent with silicosis. |
| May 13, 2013 | Rankin filed his complaint against AO alleging his injury was "lung disease and silica related conditions, caused by exposure to respirable crystalline silica." |
| January 14, 2014 | Dr. Haber diagnosed Rankin with chronic simple silicosis. |

¶35. AO argues that *McLemore* is directly on point with the facts of the present case. On November 14, 2005, a welder, McLemore, filed a products liability suit against manufacturers of welding rods, claiming that his exposure to harmful welding fumes from the rods resulted in "serious neurological injuries" and his eventual diagnosis of manganism, a neurological disease caused by high exposure to manganese. *McLemore*, 54 So. 3d at 833-35 (¶¶ 1-2, 9). The manufacturers argued that McLemore's claims were time barred because he knew he had an injury on September 3, 2002, when a neurologist had diagnosed him with Parkinsonism and had informed him that his condition may have been related to his occupation as a welder. *Id.* at 835 (¶ 12). McLemore argued that his cause of action did not accrue until October 2005, when he was specifically diagnosed with manganism. *Id.* at 835 (¶ 13). McLemore argued that he did not know that the welding fumes had caused his damages until the manganism diagnosis. *Id.* at 835 (¶ 13). At trial, the physician who had

16

diagnosed McLemore with manganism testified that manganism was a syndrome with features of atypical Parkinsonism. *Id.* at 834 (¶ 8).

¶36.    The Court held that McLemore's cause of action was time barred because he knew of his injury in September 2002 when he was "informed of the correlation between his symptoms and welding." *Id*. at 837, 839 (¶¶ 23-31). The Court held that, while notice of the causal relationship is irrelevant to the accrual of a cause of action, it showed McLemore's knowledge of his injury at that time. *Id.* at 837 (¶ 23). The Court determined that the following "events and actions" taken by McLemore showed that he knew or should have known that he had an injury no later than September 2002: he had difficulty using his left hand in December 2001; he was informed that his Parkinsonism might have been related to his welding work; he sought legal advice and he filed a complaint in 2004 prior to his manganism diagnosis alleging "serious neurological injury" from exposure to manganese products. *Id.* at 835, 838 (¶¶ 9, 24).

¶37.    AO also relies on the district court's decision in *Langston v. Pangborn Corp*., 2014 WL 347718 (S.D. Miss. Jan. 31, 2014) (not reported) in support of its argument. On May 14, 2012, Langston filed a complaint, which seems to be strikingly similar to Rankin's complaint in the present case, against personal respiratory equipment manufacturers, including AO. *Id.* at *1. Like Rankin, Langston alleged that he suffered from "lung disease and silica related conditions" as a result of being exposed to crystalline silica while working as a sandblaster. *Id.* The defendants argued that Langston had knowledge of his "lung injuries" before May 14, 2009, three years prior to the filing of his complaint. *Id.* at * 2.

Langston argued that his claim did not accrue until he was diagnosed with silicosis on November 7, 2012, which was six months *after* he filed his complaint. *Id*. at **4-5. The district court addressed the issue of the post-complaint silicosis diagnosis:

> Without overlooking the obvious, the Court notes that Langston's November 7, 2012, silicosis diagnosis occurred almost six (6) months after he filed suit on May 14, 2012. The diagnosis was made by Dr. Steven Haber, Langston's retained medical expert. No medical record showing a diagnosis of silicosis from any of Langston's treating physicians has been presented to the Court. Clearly then, the subject diagnosis is immaterial to the issue of when the claims alleged in the Complaint accrued for statute of limitations purposes and fails to give rise to a genuine dispute for trial. Any contrary argument from Langston is "disingenuous and without merit." *Powe v. Byrd*, 892 So. 2d 223, 228 (¶ 17) (Miss. 2004) (rejecting the plaintiff's argument that the statute of limitations did not start to run until December 1, 2000, when her complaint was filed on August 3, 2000). Further, the accrual rule cited by the Mississippi Supreme Court in *Morgan*, *Kinsey*, and *Kelly* is inapplicable here since the plaintiffs in those actions filed suit subsequent to each respective silicosis diagnosis. *See Empire Abrasive Equip. Corp. v. Morgan*, 87 So. 3d 455, 462 (¶ 25) (Miss. 2012); *Kinsey v. Pangborn Corp.*, 78 So. 3d 301, 307 (¶ 18) (Miss. 2011); *Clark Sand Co. v. Kelly*, 60 So. 3d 149, 162 (¶ 46) (Miss. 2011).

*Langston*, 2014 WL 347718, at *5.

¶38. The key distinguishable fact from the present case, however, was that Langston testified that in 2007 he had researched silicosis and learned that it is caused by the inhalation of silica dust after he had found out he had "lung trouble." *Id.* at *3. The district court held that "the extensive and consistent medical treatment sought by Langston for his breathing problems confirms that he either knew or should have known of his lung injuries prior to 2009." *Id.* at *6. And "the accrual of Langston's cause of action was not dependent upon an expert witness placing the label of silicosis on his injury." *Id.* The district court concluded that Langston's claims were time barred under Section 15-1-49 because the record

18

established that Langston knew or should have known of his "lung disease and silica related conditions," "injury to his lungs and body," and "premature disability" more than three years prior to the filing of his complaint. *Id.*

¶39. In *Phillips 66 Co. v. Lofton*, 94 So. 3d 1051, 1056 (¶1) (Miss. 2012), Lofton, a former oil rig worker, filed a complaint on May 19, 2004, alleging that he suffered from asbestosis[11] as a result of exposure to a defendant's product. Lofton began experiencing shortness of breath in 1995, and chest x-rays from 1995 and 1996 revealed pulmonary fibrosis. *Id*. at 1057 (¶ 5). Lofton first sought treatment for his pulmonary symptoms in September 2003 with a pulmonologist, who diagnosed Lofton with pulmonary fibrosis. *Id.*

¶40. In 2004, the same pulmonologist noted that Lofton likely was suffering from pneumoconiosis, also known as asbestosis. *Id*. Lofton was diagnosed conclusively with asbestosis in 2010, several years after he had filed his complaint. *Id*. The defendant argued that the statute of limitations began running in 1995, or at the latest 1996, when physicians discovered pulmonary fibrosis in Lofton's lungs. *Id.* at 1059 (¶ 14). However, Lofton argued that "he could not have reasonably known of his lung injury until he sought treatment from [a pulmonologist] and was diagnosed with pulmonary fibrosis, or scarring of the lungs in September 2003." *Id.*

¶41. The Court sated: "[A]ccording to Lofton's testimony, he was seeking medical treatment for health concerns unrelated to his lungs in 1995 and 1996 and was not made

---

[11] "Asbestosis is a progressive disease caused by scar tissue in the lungs as a result of the body's response to the presence of asbestos fibers in the lungs." *Lofton*, 94 So. 3d at 1057 (¶ 5).

aware of the fibrosis until [a pulmonolgist] diagnosed him in 2003." *Id.* at 1059 (¶ 16). "Accordingly, Lofton could not reasonably have known about his injury until he sought treatment in September 2003 for symptoms associated with his asbestosis and was diagnosed with pulmonary fibrosis." *Id.*

¶42.   Because the discovery of the injury was a disputed issue of fact, the trial court submitted the following question of discovery to the jury: If you determine that Mr. Lofton knew or by reasonable diligence should have known of his injury before May, 2001, then you must return a verdict for the defendant. *Id.* at 1059-1060 (¶ 17). The Court held that the issue of whether the statute of limitations barred Lofton's claim was a disputed issue of fact that was resolved by the jury in favor of Lofton. *Id.*

¶43.   The record does not reveal when Rankin sought legal advice related to his lung injury. However, it is undisputed that Rankin began experiencing breathing problems in 2000. It also is undisputed that Rankin sought medical treatment for shortness of breath and had been diagnosed with exacerbation of COPD in 2007.

¶44.   The district court in *Bryant v. 3M Co.*, 2014 WL 2761553, *3 (S.D. Miss. June 18, 2014) (not reported), addressed a set of facts nearly identical to the present case under Mississippi law. On April 9, 2013, Bryant, a sandblaster for several years in the 1970s, filed a products liability complaint claiming that he had developed "lung disease and silica related conditions" because he had used defective personal respiratory equipment from certain manufacturers. *Id*. at *1. Bryant claimed in his discovery responses that he suffered from "shortness of breath, silicosis, and any condition caused by his exposure to respirable silica."

20

*Id.* at \*2. The issue before the district court was whether Bryan knew or reasonably should have known of his alleged injuries before April 9, 2010. *Id.* at \*2.

¶45. Bryant experienced both wheezing and shortness of breath as early as 1992; was diagnosed with both emphysema and severe COPD as early as 2000. In 2005, a radiologist identified markings on Bryant's lungs that "could be chronic fibrotic type changes," but made no definitive diagnosis. He was referred to a pulmonolgist in 2007. *Id.* The Court stated: "First, [Bryant] did not know about the 'B reading' until February 2014–after he had already filed suit. Similarly, [Dr.] Haber first diagnosed [Bryant] with silicosis on January 14, 2014–after [he] had already filed suit."[12] The district court stated that, as a result, neither Dr.

---

[12] The district court unequivocally stated that Dr. Haber "first diagnosed [Bryant] with silicosis on January 14, 2014–after he had already filed suit." However, the Court notes that there appears to have been a typographical error as to the year of a B reading and silicosis diagnosis in the preceding sentences in the same paragraph. The entire paragraph reads:

> To be clear, the Court does not hold that Plaintiff's claims accrued when he received a "B reading" from Dr. Steven Haber on **September 14, 2011**, or when Dr. Haber provided a silicosis diagnosis on **January 14, 2011**– as urged by Plaintiff. First, Plaintiff did not know about the "B reading" until **February 2014**–after he had already filed suit. Similarly, Haber first diagnosed Plaintiff with silicosis on **January 14, 2014**–after Plaintiff had already filed suit. Therefore, neither Dr. Haber's "B reading" nor his diagnosis report could have provided Plaintiff with the knowledge necessary to file suit.

*Bryant*, 2014 WL 2761553, at \*4 (record citations omitted and emphasis added to show the inconsistency of the years). Despite the two different years, it is clear that Bryant, at minimum, received actual knowledge of his silicosis diagnosis after he filed his complaint.

Haber's B-reading nor his diagnosis report could have provided Bryant with the knowledge necessary to file suit. *Id.* at \*4.

¶46.     In applying the Court's holdings in *Lofton* and *McLemore*, the district court held that there was a genuine issue of material fact regarding when a plaintiff knew or reasonably should have known of his alleged "silicosis/pulmonary fibrosis." *Id.* at \*4.  However, the district court granted the defendant's motion for summary judgment in part with respect to Bryant's claims for "COPD, emphysema, shortness of breath, wheezing, and any other injury or medical condition diagnosed before April 9, 2010." *Id.*

¶47.     The Court stated in *Lofton* that the plaintiff could not reasonably have known about his injury until he sought treatment for symptoms associated with his alleged injury and was diagnosed. *Lofton*, 94 So. 3d at 1059 (¶ 16).  The Court has held that "absolute certainty nor an expert opinion vest the right to a cause of action under [Mississippi's] products liability statute." *Lowery*, 909 So. 2d at 52 (¶ 18).  The post-complaint diagnosis of the occupational injury, silicosis, is irrelevant to the analysis, because the Court has emphasized that "the cause of action accrue[s] upon discovery of the injury, *not discovery of the injury and its cause*." *Angle v. Koppers, Inc*., 42 So. 3d 1, 5 (¶ 9) (Miss. 2010).

¶48.     Rankin's complaint alleged that his injury was "lung disease and silica related conditions, caused by exposure to respirable crystalline silica."  Rankin also alleged that his "lungs and body were injured" and he had "premature disability" as a result of silica inhalation.  Reasonable minds could not have differed in answering the question on the special verdict form: "Do you find by a preponderance of the evidence that [Rankin] knew

22

or should have known before May 13, 2010, that he had the lung injury alleged in this lawsuit?" It is undisputed that Rankin was aware of and sought treatment for lung disease, COPD, in 2007. Moreover, Rankin's experts opined that Rankin's myriad of remaining medical conditions, of which he was aware and for which he sought treatment before May 13, 2010, were related "in part" or "exacerbated" by silica exposure. Accordingly, we hold that the trial court erred by failing to grant AO's motion for a directed verdict because Rankin's claims are time barred.

## CONCLUSION

¶49. Because Rankin's claims are time barred, we reverse the jury verdict, vacate the judgment in favor of Rankin, and render a judgment as a matter of law in favor of AO.

¶50. **REVERSED AND RENDERED.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., MAXWELL AND BEAM, JJ., CONCUR. CHAMBERLIN, J., CONCURS IN PART AND IN RESULT WITHOUT SEPARATE WRITTEN OPINION. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, J.**

**KITCHENS, JUSTICE, DISSENTING:**

¶51. I respectfully dissent. In holding that Rankin's entire claim is time barred, the majority wields a club when a scalpel is appropriate. While I agree that this case must be reversed on statute of limitations grounds, I would remand for a new trial. Although these two statements may seem, at first blush, to be mutually exclusive, in this instance they are not. The majority finds that Rankin's 2007 COPD diagnosis, as a matter of law, started the running of the statute of limitations on his silicosis claim. But that conclusion is not supported by the case law the majority cites or by the medical testimony adduced at the trial. This is a silicosis

23

claim, not a COPD claim. While COPD indeed is a lung condition, there was a complete absence of evidence that the COPD diagnosis should have informed Rankin of the presence of silicosis, which was the specific lung injury for which Rankin sought recovery. Our case law dictates that, under the circumstances, the question of when Rankin knew or should have known of his silica-induced injury was a jury issue. Because Rankin's COPD was diagnosed outside the limitations period, he was not entitled to recover damages for COPD, and I would reverse and remand for a new trial.

¶52. The three-year statute of limitations applicable to Rankin's action is found in Mississippi Code Section 15-1-49(2). The statute provides that, "[i]n actions for which no other period of limitation is prescribed and which involve latent injury or disease, the cause of action does not accrue until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury." Miss. Code Ann. § 15-1-49(2) (Rev. 2012). A latent injury is one that is "undiscoverable by reasonable methods." *PPG Architectural Finishes, Inc. v. Lowery*, 909 So. 2d 47, 51 (Miss. 2005). According to this Court's decision in *Angle v. Koppers*, 42 So. 3d 1, 5 (Miss. 2010), a cause of action for a latent injury or disease accrues when the plaintiff discovers the injury. This Court thus decided that the plain language of Section 15-1-49(2) means "that the cause of action accrued upon discovery of the injury, *not discovery of the injury and its cause*." *Id.* (emphasis in original).[13]

---

[13] While I have expressed strong disagreement with this Court's holding that a claim can accrue when the plaintiff knows of an injury but not its cause, for the purposes of my analysis today, I apply the test from *Angle*, since it is the relevant precedent of this Court. *See City of Tupelo v. Patterson*, 208 So. 3d 556, 574 (Miss. 2017) (Kitchens, J., dissenting); *Lincoln Electric Co. v. McLemore*, 54 So. 3d 833, 840 (Miss. 2010) (Kitchens, J., dissenting); *Angle*, 42 So. 3d at 9 (Kitchens, J., dissenting).

¶53. The determination of when the plaintiff "discovered, or by reasonable diligence should have discovered, the injury" is a fact-intensive inquiry, focusing on what the plaintiff knew and when. "Because there is no bright line rule, the specific facts of the case will determine whether the plaintiff knew or reasonabl[y] should have known that an injury existed." *Lowery*, 909 So. 2d at 51. This Court has observed that an individual's seeking of medical attention for side effects or symptoms may show knowledge of an injury, although other persons may not discover an injury until they review pertinent medical records. *Id.* Others may discover an injury through personal observation or experience. *Id.* One's receipt of medical treatment for an injury also may trigger the running of the limitations period. *Id.* When a genuine dispute exists, discovery of an injury is a question of fact for the jury. *Weathers v. Metropolitan Life Ins. Co.*, 14 So. 3d 688, 692 (Miss. 2009) (quoting *Donald v. Amoco Prod. Co.*, 735 So. 2d 161, 167 (Miss. 1999)).

¶54. Rankin suffered from a multitude of medical conditions, including congestive heart disease, coronary artery disease, diabetes, dementia, seizure disorders, and multiple strokes. He developed breathing problems in 2000, and in 2007 he was diagnosed with exacerbation of COPD. Dr. Obie McNair testified that "[t]hree types of major disease processes come under the heading of COPD: emphysema, chronic bronchitis, and asthma." Dr. McNair testified that Rankin had a history of emphysema, "which is a form of COPD," and he thought Rankin's COPD possibly was caused by silicosis, because he could find no other cause. Dr. Malcolm Taylor, a defense expert, testified that COPD is a condition that encompasses "a lot of different lung diseases," and had numerous possible causes, such as

25

childhood asthma or multiple infections. He testified that it is uncommon for silicosis to cause COPD.

¶55.    Dr. Steven Haber testified that silicosis is a form of pneumoconiosis, which is a dust disease of the lungs caused by inhaling particles that scar the lung. He testified that silicosis results when scar tissue, also known as fibrosis, develops in the lung tissues after the inhalation of silica. All experts agreed that a diagnosis of silicosis requires four criteria: (1) imaging, such as an x-ray, showing the scar tissue; (2) a history of exposure to silica; (3) a sufficient latency period; and (4) no other explanation for the presence of scar tissue. On January 19, 2010, Rankin had a chest x-ray that, according to the radiologist's note, showed "pulmonary fibrotic pathology." No reason for the x-ray appears in the record, and no accompanying physician's note or other evidence shows that this information ever was communicated to Rankin. This chest x-ray was one of forty-two chest x-rays admitted in evidence. Dr. McNair testified to the existence of thousands of pages of medical records on Rankin, and defense expert Dr. Desmondes Haynes testified that he had reviewed several banker's boxes of medical records on Rankin.

¶56.    On October 22, 2012, Dr. Haber performed a B-reading of a more recent chest x-ray and found the x-ray to be consistent with silicosis. On May 13, 2013, Rankin filed a complaint alleging that he suffered of "lung disease and silica related conditions, caused by exposure to respirable crystalline silica." Later, on January 14, 2014, Dr. Haber diagnosed Rankin with silicosis. During closing arguments, Rankin argued that he did not know he had

26

a silica-induced injury until he had the B-reading and diagnosis. Although the defense argued that Rankin's 2007 COPD diagnosis started the limitations period, the jury found for Rankin.

¶57.    The majority finds that the trial court erred by submitting the statute of limitations issue to the jury because the 2007 COPD diagnosis began the running of the statute of limitations as a matter of law. I disagree. The case law cited by the majority does not support its conclusion. In *Angle v. Koppers*, 42 So. 3d 1, 2 (Miss. 2010), the plaintiff sued a wood-treatment plant and other defendants in 2006 for numerous injuries caused by her exposure to toxic chemicals. Angle had been diagnosed with her last injury five years before filing the complaint. *Id.* at 3. She argued that the statute of limitations did not begin to run until she knew the cause of her injuries. *Id.* at 4. This Court rejected that argument, finding that her cause of action had accrued when she had discovered the injury itself, not the injury and its cause. *Id.* at 5 (citing Miss. Code Ann. § 15-1-49(2)). The Court held that, because Angle's claims had accrued, at the latest, when she had been diagnosed with her last disease five years before filing the complaint, her claim was time barred. *Id.* at 7.

¶58.    In *Lincoln Electric Co. v. McLemore*, 54 So. 3d 833, 833-34 (Miss. 2010), McLemore sued manufacturers of welding rods, alleging that his exposure to harmful fumes from welding had caused his diagnosis of a neurological disease known as manganism. On September 3, 2002, McLemore had been informed by a physician that he had Parkinsonism or Parkinsonism syndrome, and that his condition could have been related to welding. *Id.* at 834. McLemore then sought legal advice. *Id.* In December 2002, he was advised by a physician to discontinue welding. *Id.* From 2004 through 2006, McLemore filed several

lawsuits claiming neurological injury from exposure to welding products. *Id.* at 835. In October 2005, he was diagnosed with manganism, and, on November 14, 2005, he filed his complaint seeking recovery specifically for manganism. *Id.* This Court held that McLemore had known of his injury on September 3, 2002. *Id.* at 838. This was because, on that date, McLemore had been diagnosed with Parkinsonism or Parkinsonism syndrome related to welding, which prompted him to seek legal advice and to file lawsuits alleging neurological injury from exposure to manganese products. *Id.*

¶59.   But in ***Phillips 66 Co. v. Lofton***, 94 So. 3d 1051, 1059 (Miss. 2012), the Court held that Lofton's asbestosis claim, filed May 19, 2004, was not time barred, despite the facts that, in 1995, Lofton had experienced shortness of breath and both a 1995 CT scan and a 1996 x-ray had shown pulmonary fibrosis. As in this case, Lofton definitively was diagnosed with the injury after he had filed suit, in 2010. We held that, although as early as 1995 Lofton had shortness of breath and a CT scan had shown pulmonary fibrosis, Lofton reasonably could not have discovered the asbestosis in 1995 or 1996 because then he had been seeking medical treatment for conditions unrelated to his lungs. *Id.* And a physician had testified that fibrosis in the lungs has many causes and is not always associated with asbestosis. *Id.* We held that Lofton reasonably could not have known of his asbestosis injury until he was notified of the pulmonary fibrosis when he sought treatment in September 2003 for asbestosis symptoms. *Id.* For these reasons, this Court held that the question of discovery was for the jury. *Id.* at 1059-60.

¶60.   The majority also relies on a pair of unpublished federal district court opinions applying Mississippi law to this issue. Federal court decisions are not binding upon this Court and are merely persuasive. ***Corban v. United Servs. Auto. Ass'n***, 20 So. 3d 601, 611 n.15 (Miss. 2009). But because the majority relies heavily upon these cases, I address them. In ***Langston v. Pangborn Corp.***, 2014 WL 347718 (S.D. Miss. Jan. 31, 2014) (not reported), Langston filed suit on May 14, 2012, against various defendants alleging "lung disease and silica related conditions" from silica exposure. ***Id.*** at *1. Langston argued that the limitations period did not start running until he was diagnosed with silicosis after he had filed the complaint. ***Id.*** at *2. But Langston had sought treatment for emphysema and COPD beginning in 2001, and 2005 x-rays showed pulmonary fibrotic scarring. ***Id.*** at *3. Langston testified that, in 2007, he researched silicosis and discovered it was caused by the inhalation of silica dust. ***Id.*** First, the district court held that the limitations period had begun to run some time prior to Langston's formal silicosis diagnosis; obviously, Langston had known of his injury because it had prompted him to file suit. ***Id.*** at *5. Second, the district court determined that the statute of limitations had expired before Langston had filed his suit. ***Id.*** at *6. The district court found that Langston knew or should have known of his injury prior to May 14, 2009, because, more than three years before the lawsuit, he had pulmonary problems related to silicosis, he had been diagnosed with numerous pulmonary conditions, he had researched silicosis, and no definitive expert diagnosis is necessary to commence the running of the statute of limitations. ***Id.*** at **5-6.

¶61.   *Langston* seems to imply that a plaintiff's diagnosis with any physical problem even tangentially related to silicosis might commence the running of the statute of limitations on a silicosis claim. If that were the law, then Rankin's COPD diagnosis, later related by Dr. McNair to his silicosis, would have commenced the running of the statute of limitations. But as previously discussed, *Langston*, a federal case, is not binding on this Court. Moreover, the federal district judge who authored *Langston* distinguished it in the other unpublished opinion cited by the majority, *Bryant v. 3M Company*, 2014 WL 2761553 (S.D. Miss. June 18, 2014) (not reported). As the majority astutely recognizes, the facts of *Bryant* and the facts of this case are practically identical.

¶62.   Bryant filed his complaint against certain respiratory equipment manufacturers on April 9, 2013, alleging "lung disease and silica related conditions." *Id.* at *1. Medical records showed that Bryant's breathing problems began in 1991. *Id.* at *2. He was diagnosed with severe COPD and emphysema in 2000. *Id.* In April 2005, chest x-rays showed prominent interstitial markings that the radiologist stated "could be chronic fibrotic type changes," but it was "unclear." *Id.* In 2007, a radiologist found prominent markings in Bryant's lungs. *Id.* After 2007, Bryant's breathing problems worsened, and he began oxygen treatment in 2008. *Id.*

¶63.   Faced with this set of facts, the district court allowed Bryant to proceed with his claims for "silicosis/pulmonary fibrosis," finding that a genuine issue of material fact existed as to whether these claims had been brought within the limitations period. *Id.* at *4. But the district court found that Bryant's claims for "COPD, emphysema, shortness of breath,

30

wheezing, and any other injury or medical condition diagnosed before April 9, 2010" were time barred. *Id.* The district court discussed *Lofton*'s holding that, despite the fact that Lofton had experienced lung symptoms and had exhibited scarring on his lungs for years before filing suit, Lofton's "claim did not accrue until he received a diagnosis of pulmonary fibrosis." *Id.* at * 3. And the district court distinguished *Langston* because, in that case, the plaintiff had been diagnosed with pulmonary fibrosis seven years before filing suit and had researched silicosis for five years before filing suit. *Id.* The district court also found *McLemore* to be distinguishable because, in *McLemore*, the plaintiff had been informed of the connection between his symptoms and welding and had sought legal advice years before filing the lawsuit at issue. *Id.*

¶64.    In *Bryant*, the district court rejected the notion that the mere appearance of some symptom, such as COPD, that later is linked to silicosis commences the running of the statute of limitations on the silicosis claim. *Id.* at *4. Rather, the district court held, a diagnosis of a such a symptom starts the running of the limitations period as to *that injury*. *Id.* The plaintiff still may recover for silicosis if the claim is brought within three years of the date the plaintiff knew or should have known of the silicosis. *Id.* And *Bryant* recognized this Court's holding in *Lofton* that a radiologist's identification of pulmonary fibrotic scarring on an x-ray does not commence the statute of limitations unless the plaintiff has some awareness of that finding. *Id.* at *3 (citing *Lofton*, 94 So. 3d at 1059). In *Lofton*, the plaintiff was unaware of the finding of pulmonary fibrotic scarring because the plaintiff had sought treatment for unrelated medical conditions. *Lofton*, 94 So. 3d at 1059. And in *Bryant*, the

plaintiff was not charged with knowledge of pulmonary fibrotic scarring because the radiologist had stated that its presence was "unclear." *Bryant*, 2014 WL 2761553, at *3.

¶65. The medical evidence in this case established that pulmonary fibrosis, or scarring of the lung tissue, is the physical finding that attends a diagnosis of silicosis. The cases discussed above provide that, before a court can hold, as a matter of law, that a plaintiff knew or should have known of a silicosis injury, the plaintiff must have had some reasonable awareness of a finding of pulmonary fibrosis or of some other unambiguous indicator of silicosis. Under *Lofton* and *Bryant*, merely seeking treatment for some physical condition later linked to silicosis is not enough. *Bryant* held that seeking treatment for COPD outside the three-year limitations period merely bars the plaintiff's recovery for COPD. As the medical evidence in this case, discussed above, demonstrates, COPD and silicosis are vastly different injuries of the lung, and a diagnosis of COPD is not indicative of the presence of silicosis. Thus, without more, a plaintiff diagnosed with the lung injury, COPD, should not be charged with automatic knowledge of the very different lung injury, silicosis.

¶66. In this case, Rankin received a COPD diagnosis in 2007. Applying *Bryant* and *Angle*, his claim for recovery for COPD is time barred, because Rankin had three years from the date of the COPD diagnosis to commence an action to recover for that injury. Under the same logic, Rankin cannot recover for any other injury or medical condition diagnosed before May 13, 2010, because those claims also are time barred as a matter of law. But a jury question undoubtedly existed on Rankin's claim for silicosis. While a radiologist's note on a chest x-ray dated January 19, 2010, identified "pulmonary fibrotic pathology," no evidence existed

32

that Rankin had sought treatment for silicosis or pulmonary fibrotic pathology on that date, or that the contents of the radiologist's note were communicated to Rankin on that date. *See Lofton*, 94 So. 3d at 1059. Rankin presented evidence that he first knew or should have known of his pulmonary fibrosis when he received the B-reading from Dr. Haber in 2012. Thus, under *Lofton*, the question of whether he knew or should have known of his silicosis injury prior to May 13, 2010, was for the jury.

¶67.    As this Court has held, determining when the plaintiff knew or should have known of an injury is a fact-intensive inquiry. In this case, a correct application of the case law to the facts yields the conclusion that a genuine dispute existed on the issue of when Rankin knew or should have known of his silicosis. However, Rankin's claims for any other medical conditions diagnosed prior to May 10, 2010, are time barred. Therefore, I would reverse and remand for a new trial.

**KING, J., JOINS THIS OPINION.**