# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-CA-00207-COA

**ANTHONY K. HOOD AND BARBARA L. HOOD**  APPELLANTS

**v.**

**A & A EXCAVATING CONTRACTORS, INC.,**  APPELLEES
**ASBURY LANE VILLAGE, LLC AND ALV**
**DEVELOPMENT, LLC**

| | |
|---|---|
| DATE OF JUDGMENT: | 11/20/2020 |
| TRIAL JUDGE: | HON. JOHN H. EMFINGER |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | JAMES D. SHANNON |
| | HEATHER LYNN HALL |
| ATTORNEYS FOR APPELLEES: | ROBERT P. THOMPSON |
| | JAMES A. BOBO |
| | MARK C. BAKER SR. |
| | MICHAEL ALLEN AKERS |
| | CHARLES BARTON WYNN JR. |
| | ADRIAN WESTBROOK MILLS |
| NATURE OF THE CASE: | CIVIL - PROPERTY DAMAGE |
| DISPOSITION: | AFFIRMED - 05/17/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WILSON, P.J., GREENLEE AND SMITH, JJ.**

**WILSON, P.J., FOR THE COURT:**

¶1.    Anthony and Barbara Hood's home flooded in February 2016, March 2016, and again in January 2017. In December 2019, the Hoods sued a company that operated a nearby gravel pit and two entities that had been involved in the development of a nearby residential neighborhood. The Hoods alleged that their home had flooded as a result of the defendants' negligence. The circuit court subsequently granted summary judgment in favor of the

defendants, holding that the Hoods' claims were barred by the general three-year statute of limitations, Miss. Code Ann. § 15-1-49(1) (Rev. 2019). On appeal, the Hoods argue that their complaint was timely filed based on the "discovery rule," *id.* § 15-1-49(2), and/or the "continuing tort doctrine." We find no error and affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. The Hoods bought a house in Pearl in 2013. Their house and property experienced flooding in February 2016, March 2016, and January 2017. The Hoods initially believed that the City of Pearl was responsible for the flooding due to the City's failure to properly maintain drainage ditches and culverts near their property. The Hoods sent the City a notice of claim in January 2017 and filed suit against the City in August 2017.[1]

¶3. The Hoods hired an engineer, Robert Millette, to assist with their suit against the City. In his first report, dated April 16, 2018, Millette found that A&A Excavating Contractors LLC (A&A) and ALV Development Inc. (ALV) contributed to the flooding. Millette's second report, dated July 12, 2019, identified Asbury Lane Village LLC (Asbury) as an additional responsible party. According to Millette, A&A, ALV, and Asbury negligently failed to implement erosion control measures and stormwater prevention plans for a gravel pit (operated by A&A) and a residential neighborhood (developed by ALV and Asbury) located "upstream" from the Hoods. Millette found that their negligence caused "excessive

---

[1] The circuit court granted summary judgment in favor of the City, holding that it was immune from liability under the discretionary-function exemption of the Mississippi Tort Claims Act. However, this Court reversed the grant of summary judgment and remanded the case for further proceedings on the Hoods' complaint against the City. *See Hood v. City of Pearl*, 333 So. 3d 73 (Miss. Ct. App. 2021).

2

sediment runoff and buildup" in drainage ditches and culverts near the Hoods' house, which in turn caused or contributed to the flooding on the Hoods' property.

¶4. The Hoods filed suit against A&A, ALV, and Asbury on December 13, 2019. The defendants subsequently filed motions for summary judgment. Among other grounds, the defendants argued that the Hoods' claims were barred by the general three-year statute of limitations, Miss. Code Ann. § 15-1-49(1). The defendants argued that the statute of limitations began to run when the Hoods became aware of their injury (the flooding) and expired before the Hoods filed suit against the defendants in 2019. In response, the Hoods argued that under the "discovery rule," *id.* § 15-1-49(2), the limitations period did not begin to run until they received Millette's reports and learned that the defendants' acts and omissions were a cause of the flooding. The Hoods also argued that their complaint was timely because the repeated flooding of their property constituted a "continuing tort."

¶5. Applying section 15-1-49(2), the circuit court held that "[o]nce the [Hoods'] property was damaged by a flood, the 'injury' was no longer 'latent' . . . ." The court reasoned that the limitations period began to run, at the latest, following the March 2016 flood and therefore expired before the Hoods filed suit against the defendants in December 2019. Accordingly, the circuit court granted summary judgment in favor of all three defendants. The Hoods filed a motion for reconsideration under Mississippi Rule of Civil Procedure 59(e), which the circuit court denied, and a notice of appeal.

## ANALYSIS

¶6. We review an order granting summary judgment de novo, viewing the evidence in the

3

light most favorable to the non-moving party. *Angle v. Koppers Inc.*, 42 So. 3d 1, 4 (¶6) (Miss. 2010). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c). In responding to a summary judgment motion, the non-moving party "may not rest upon the mere allegations or denials of his pleadings, but . . . by affidavits or as otherwise provided [by Rule 56], must set forth specific facts showing that there is a genuine issue for trial." M.R.C.P. 56(e).

## I. The "discovery rule" did not toll the statute of limitations.

¶7. All parties agree that the Hoods' complaint is governed by the general three-year statute of limitations found in Mississippi Code Annotated section 15-1-49, which provides in relevant part:

(1) All actions for which no other period of limitation is prescribed shall be commenced within three (3) years next after the cause of such action accrued, and not after.

(2) In actions for which no other period of limitation is prescribed and which involve latent injury or disease, the cause of action does not accrue until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury.

Miss. Code Ann. § 15-1-49(1)-(2). The Hoods argue that under subsection (2), known as the discovery rule, the statute of limitations did not begin to run until they received Millette's first report in 2018 and learned that the defendants' acts and omissions were a possible cause of the flooding.

¶8. The Hoods' reliance on the discovery rule is misplaced. As our Supreme Court has

4

explained, the plain language of "[s]ection 15-1-49(2) provides a discovery rule that delays the accrual of the cause of action until the plaintiff discovers or with reasonable diligence should have discovered a latent injury . . . . No provision of Section 15-1-49 provides that a plaintiff must have knowledge of the cause of the injury before the cause of action accrues, initiating the running of the statute of limitations." *Angle*, 42 So. 3d at 7 (¶18). Therefore, the Supreme Court has held that in cases governed by section 15-1-49, "causes of action accrue upon discovery of the injury, *not discovery of the injury and its cause. Knowledge of the cause of the injury is irrelevant to the analysis*; rather, the inquiry is when the plaintiff knew or should have known of an injury." *F & S Sand Inc. v. Stringfellow*, 265 So. 3d 170, 174 (¶9) (Miss. 2019) (emphasis added) (brackets, quotation marks, and citations omitted) (quoting *Am. Optical Corp. v. Est. of Rankin*, 227 So. 3d 1062, 1068 (¶23) (Miss. 2017)). Thus, in *Rankin*, a case filed by a former construction worker against a silica manufacturer, the Supreme Court "held that the applicable three-year statute of limitations began to run under the discovery rule at the time the worker sought treatment for chronic obstructive pulmonary disease rather than the date he was first diagnosed with silicosis by his retained expert pulmonologist." *Stringfellow*, 265 So. 3d at 174 (¶8) (citing *Rankin*, 227 So. 3d at 1074). The statute began to run when the plaintiff discovered *his injury* (pulmonary disease), not the later date on which he discovered its underlying cause (silica exposure). *Id.* Under section 15-1-49, a plaintiff has three years from the discovery of his injury to determine the cause(s) of the injury and file suit against the responsible party or parties.

¶9.     The same analysis applies in this case. The Hoods knew that they had been injured

when their house flooded in February 2016 and March 2016. The statute of limitations began to run against the Hoods by at least March 2016—"upon [their] discovery of the injury." *Stringfellow*, 265 So. 3d at 174 (¶9) (quoting *Rankin*, 227 So. 3d at 1068 (¶23)). The fact that the Hoods initially blamed the City of Pearl rather than A&A, ALV, or Asbury is of no moment. To reiterate, "[k]*nowledge of the cause of the injury is irrelevant to the analysis*" under section 15-1-49. *Id.* (emphasis added). The Hoods had three years from their discovery of the injury to determine its cause(s) and file suit against the responsible party or parties. Because they failed to do so, their claim is barred by the statute of limitations.

¶10. In arguing that their complaint was timely filed, the Hoods rely heavily on *Punzo v. Jackson County*, 861 So. 2d 340 (Miss. 2003), a case in which a homeowner sued a county under the Mississippi Tort Claims Act (MTCA), alleging that his home had flooded as a result of the county's negligent repairs to a nearby bridge. *Id.* at 342-43 (¶¶1-7). However, *Punzo* applied the MTCA's judicially created discovery rule,[2] not section 15-1-49(2). *Id.* at 343-47 (¶¶13-24). As our Supreme Court has explained, "[n]ot all discovery rules are created equal." *Caves*, 991 So. 2d at 154 (¶48). "In analyzing *what* the plaintiff must

_____

[2] Claims under the MTCA are subject to a one-year statute of limitations. Miss. Code Ann. § 11-46-11(3) (Rev. 2019). "The MTCA includes within its provisions and language no discovery rule which tolls or delays the beginning of the running of the statute of limitations until the claimant discovers the injury or the claim." *Caves v. Yarbrough*, 991 So. 2d 142, 150 (¶32) (Miss. 2008). Nonetheless, the Supreme Court has "'incorporated' a discovery rule into the MTCA." *Id.* at 154 (¶9) (citing *Barnes v. Singing River Hosp.*, 733 So. 2d 199, 205 (¶20) (Miss. 1999)). In *Caves*, the Court reaffirmed the MTCA's "judicially created" discovery rule based on "the doctrine of stare decisis" because the Legislature had reenacted the MTCA's statute of limitations "without addressing or countermanding [the] Court's decision in *Barnes*." *Caves*, 991 So. 2d at 154 (¶¶46-47). In *Punzo*, the Court noted that the MTCA's discovery rule "is particularly important" given the MTCA's "relatively short one-year statute of limitations." *Punzo*, 861 So. 2d at 345 (¶18).

discover in order to trigger the running of the statute of limitations, we ordinarily are guided by the wording of a statute's discovery provision." *Id.* (emphasis added). In *Caves*, the Supreme Court specifically recognized that the discovery rule in MTCA cases differs significantly from the discovery rule in section 15-1-49(2). *Id.* at 154-55 (¶¶49-54). Under the MTCA's discovery rule, "the limitations period . . . does not begin to run until . . . the claimant knows or, in the exercise of reasonable diligence, should know of *both* the injury *and the act or omission which caused it*." *Id.* at 155 (¶53) (emphasis added). Thus, in *Punzo*, the Supreme Court emphasized that the MTCA's one-year statute of limitations did not begin to run until the homeowner had discovered, or by reasonable diligence should have discovered, both his injury and the negligence that caused it. *Punzo*, 861 So. 2d at 344-46 (¶¶16-19).

¶11. The Hoods' reliance on *Punzo* is misplaced because this is not an MTCA case, and the MTCA's discovery rule does not apply. The Supreme Court made the same point in *City of Tupelo v. O'Callaghan*, 208 So. 3d 556, 569 n.12 (Miss. 2017). Like this case, *O'Callaghan* was governed by the three-year statute of limitations and discovery rule in section 15-1-49. *Id.* at 568-70 (¶¶35-40). For that reason, the Supreme Court held that the plaintiffs' reliance on *Punzo* was misplaced. *Id.* at 569 n.12. The Court stated that *Punzo*'s "holding [was] inapplicable to [the plaintiffs'] claims" because *Punzo* was decided under "a different statute of limitations with a different discovery rule." *Id.*[3] The same is true here.

---

[3] *See also Romano v. United States*, No. 1:07-CV-656 LG-JMR, 2008 WL 2879429, at *2 (S.D. Miss. July 14, 2008) (stating that the "[p]laintiffs' reliance on *Punzo*" and its holding regarding the discovery rule was "misplaced" because "*Punzo* was a claim brought under the MTCA, thus [section] 15-1-49 did not apply").

Whereas the MTCA's statute of limitations does not begin to run until the plaintiff "knows or . . . should know of both the injury and the act or omission which caused it," *Caves*, at 991 So. 2d at 155 (¶53), the Supreme Court has held that the plaintiff's "[k]nowledge of the cause of the injury is *irrelevant* to the analysis" under section 15-1-49(2). *Stringfellow*, 265 So. 3d at 174 (¶9) (emphasis added) (quoting *Rankin*, 227 So. 3d at 1068 (¶23)). Under section 15-1-49(2), the statute begins to run when the plaintiff discovers the injury itself. *Id.*

¶12. In summary, under section 15-1-49(2), the statute of limitations began to run as soon as the Hoods "discovered, or by reasonable diligence should have discovered, the injury." Miss. Code Ann. § 15-1-49. The circuit court did not err by holding that this occurred, at the latest, in March 2016, when the Hoods' home flooded for a second time. Therefore, the statute of limitations expired before the Hoods filed suit in December 2019.

## II. The "continuing tort doctrine" does not apply.

¶13. The Hoods also argue that they filed suit within the statute of limitations based on the "continuing tort doctrine." They contend that under that doctrine, the statute of limitations did not begin to run until their "last injury was sustained on January 2, 2017"—when their home flooded for a third time.

¶14. This Court rejected a similar argument in *Humphries v. Pearlwood Apartments Partnership*, 70 So. 3d 1133 (Miss. Ct. App. 2011). In *Humphries*, the plaintiffs' home flooded in October 2002. *Id.* at 1134 (¶3). In February 2006, the plaintiffs sued the owner of a nearby apartment complex, alleging that its negligent construction of the apartments had caused their home to flood. *Id.* The defendant filed a motion for summary judgment based

8

on the three-year statute of limitations. *Id.* at 1135 (¶4). In response, the plaintiffs argued that their home flooded "numerous other times between October 2002 [and] March 2003" and that the flooding was "a continuing tort that tolled the statute of limitations." *Id.* at (¶¶4, 7). However, the circuit court held that the claim was barred by the statute of limitations, and this Court affirmed on appeal. *Id.* at 1134 (¶1). This Court explained,

> A 'continuing tort' is one inflicted over a period of time; it involves a wrongful conduct that is repeated until desisted, and each day creates a separate cause of action. A continuing tort sufficient to toll a statute of limitations is occasioned by continual unlawful acts, *not by continual ill effects from an original violation*.

*Id.* at 1135 (¶8) (emphasis added) (quoting *Pierce v. Cook*, 992 So. 2d 612, 619 (¶25) (Miss. 2008)). We held that the alleged negligent "construction of the apartment complex was one event, not a repeated action." *Id.* at 1136 (¶11). The repeated flooding allegedly resulting from that one event did not constitute a continuing tort or operate to toll the statute of limitations. *Id.* at (¶¶11-12).

¶15. The same reasoning applies in this case. The Hoods presented no evidence of any "continual unlawful acts" by the defendants that occurred within the three-year statute of limitations. *Id.* at 1135 (¶8) (quoting *Pierce*, 992 So. 2d at 619 (¶25)). The Hoods assert that the allegedly negligent development by Asbury and ALV took place "over the course of years," but they provided no evidence of any acts or omissions by either entity within the relevant limitations period.[4] Moreover, the Hoods fail to address how the continuing tort

---

[4] In arguing that the continuing tort doctrine applies, the partial dissent relies entirely on allegations from the Hoods' amended complaint. *Post* at ¶28. But in response to a motion for summary judgment, "*an adverse party may not rest upon the mere allegations or denials of his pleadings.*" M.R.C.P. 56(e) (emphasis added). Rather, "his response, by affidavits or

doctrine would apply to A&A.  Ultimately, all the Hoods point to is the third flooding event on their property.  But that third flooding event was merely an "ill effect[]" of any prior alleged acts or omissions, *id.*, "not a repeated action" by any of the defendants.  *Id.* at 1136 (¶11).  Accordingly, the continuing tort doctrine is inapplicable.

## CONCLUSION

¶16.    As the circuit court held, the Hoods discovered their injury by at least the second flood they experienced on March 10, 2016.  The Hoods did not file suit until December 13, 2019.  The applicable three-year statute of limitations, Miss. Code Ann. § 15-1-49(1), was not tolled by the discovery rule or the continuing tort doctrine.  Therefore, the circuit court correctly held that the Hoods' claims are barred by the statute of limitations.

¶17.    **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., AND GREENLEE, J., CONCUR. LAWRENCE AND SMITH, JJ., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. McCARTY, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY WESTBROOKS AND LAWRENCE, JJ.; McDONALD AND SMITH, JJ., JOIN IN PART. McDONALD, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. EMFINGER, J., NOT PARTICIPATING.**

**McCARTY, J., CONCURRING IN PART AND DISSENTING IN PART:**

---

as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial.  If he does not so respond, summary judgment, if appropriate, shall be entered against him." M.R.C.P. 56(e); *see, e.g.*, *Prescott v. Leaf River Forest Prods. Inc.*, 740 So. 2d 301, 309 (¶15) (Miss. 1999) ("A non-moving party to a motion for summary judgment is not entitled to rely on general allegations or denials, but must come forth with significant probative *evidence* demonstrating the existence of the triable issue of fact." (emphasis added) (quotation marks omitted)); *Allen v. Jackson Square Apartment Homes LLC*, 231 So. 3d 251, 256 (¶25) (Miss. Ct. App. 2017) ("[M]ere allegations [in the complaint] are insufficient to create a genuine issue for trial and arguments of counsel are not evidence.").

¶18.    Because today's decision leaves a family stranded without remedy for damage done to their home and lands, I must respectfully dissent in part.  The repeated damage to the Hoods' home and property constituted a continuous tort.  Since their lawsuit was filed just shy of three years after the last flood, it should not have been dismissed as time-barred.

¶19.    I agree with the majority's reasoned decision that the general statute of limitations began to run when the Hoods first gained knowledge that their home was flooding; the trial court found this date was "at the latest, March 10, 2016."  However, I respectfully disagree with the majority's conclusion that the Hoods failed to present any evidence of any "continual unlawful acts" by the defendants with respect to the succeeding flooding of their home and lands.  Our precedent recognizes that repeated trespasses like this constitute a continuing tort.

¶20.    For instance, in one case, a condominium owner filed a lawsuit against a property owners' association asserting a continuing-trespass claim.  *Robertson v. Chateau Legrand Prop. Owner's Ass'n Inc.*, 39 So. 3d 931, 934 (¶1) (Miss. Ct. App. 2009).  The condo owner alleged the association leased, rented, and used his condo units without his consent and knowledge.  *Id*.  The chancellor concluded the plaintiff's continuing-trespass claim was barred by the statute of limitations and laches.  *Id*. at 937 (¶18).  The owner appealed and specifically argued the statute of limitations for a claim of continuing trespass did not begin to run until 1999—when the association stopped going into his unit without his consent or knowledge.  *Id*.  Additionally, the plaintiff argued that each time his unit was rented out by the association, the association committed a trespass, and as a result, the statute of limitations

11

did not begin to run until the date of the last entry. *Id.*

¶21. We found that Mississippi Code Annotated section 15-1-49 (Rev. 2003) applied. *Id.* "In the case of a continuing trespass, the statute of limitations does not begin to run from the date of the original wrong, but rather gives rise to successive causes of action *each time* there is an interference with a person's property." *Id.* at 939 (¶24) (emphasis added) (citing 54 C.J.S. *Limitations of Actions* § 202 (2008)). And so "if there are *multiple acts of trespass*, then there are *multiple causes of action*, and the statute of limitations begins to run anew with *each act.*" *Id.* (emphasis added).

¶22. Accordingly, we held that "each time the Association rented out Robertson's unit or went into Robertson's unit without his consent or knowledge, a new cause of action was created." *Id.* For "a new cause of action arose each time a trespass occurred." *Id.* at (¶25).[5]

¶23. Here, the record reveals the continuing tort doctrine is applicable. The Hoods experienced flooding on multiple occasions, with the last on January 2, 2017. The family alleged the flooding was the result of the defendants' negligence causing excessive sediment runoff and buildup in drainage ditches or culverts on their street. Like in *Robertson*, where each time the association rented out the plaintiff's units a new cause of action arose, *each* time the family's home flooded should be construed as "creat[ing] a separate cause of

---

[5] Just because the continuing tort doctrine applied did not mean all prior trespasses were tolled; the condo owner failed to take action for many years, so we found "any claim occurring prior to January 26, 1997, is barred by the statute of limitations." *Id.* And even though we found the continuous tort doctrine was applicable, we ultimately determined "Robertson implicitly consented to the Association's [actions]," which defeated his claims. *Id.* at 940 (¶30). Unlike the condo owner in the *Robertson* case, the Hoods never explicitly or implicitly consented to having their house and garage flooded.

12

action." *Humphries v. Pearlwood Apartments Partnership*, 70 So. 3d 1133, 1135 (¶8) (Miss. Ct. App. 2011).

¶24. However, the trial court collapsed these *multiple* injuries into what it saw as one loss, holding that the "Plaintiffs had knowledge of their injury," in the singular, "at the latest, on March 10, 2016." Yet the trespasses were separate and new each time. Under *Robertson*, the January 2017 flood triggered a new and separate tort, and because the Hoods filed the complaint within three years of that last trespass, their case should have been allowed to proceed for the loss suffered that third time.

¶25. Nonetheless, the majority holds the continuing tort theory does not apply, and the 2017 flooding was simply an "'ill effect[]' of any prior alleged acts or omissions" and "not a repeated action" done by the defendants. *Ante* at ¶15. To support this conclusion, the majority relies on *Humphries*, 70 So. 3d 1133. There, property owners sued an apartment partnership and others, seeking relief from flooding that had allegedly been caused by the defendants' negligent construction and maintenance of the property in a way that disrupted the natural flow of rainwater. *Id*. at 1134 (¶¶1-3). The plaintiffs argued the flooding caused by the construction was a continuing tort that tolled the statute of limitations. *Id*. at 1135 (¶7).

¶26. The *Humphries* court explained that "[a] continuing tort is one inflicted over a period of time; it involves a wrongful conduct that is repeated until desisted, and each day creates a separate cause of action." *Id*. at (¶8) (internal quotation marks omitted). "A continuing tort sufficient to toll a statute of limitations is occasioned by continual unlawful acts, not by

continual ill effects from an original violation." *Id*. (internal quotation marks omitted). "Thus, the continuing-tort doctrine will not be applicable where the harm results from *one* wrongful act or omission." *Id*. (emphasis added). In addition, the court distinguished prior caselaw where a continuing tort was found, noting "the defendants repeatedly committed an overt act, which gave rise to a new cause of action." *Id*. at 1136 (¶11).

¶27. In the end, the court found the construction of the apartment complex in *Humphries* was "one event, not a repeated action." *Id*. The court reasoned that "[w]here the tortuous act has been completed[,] . . . the period of limitations will not be extended on the ground of a continuing wrong." *Id*. at 1136 (¶12) (internal quotation marks omitted). Relying on *Humphries*, the majority asserts that the third flooding event was an "'ill effect[]' of any prior alleged acts or omissions, *id*., 'not a repeated action' by any of the defendants." *Ante* at ¶15 (quoting *Humphries*, 70 So. 3d at 1136 (¶11)).

¶28. But unlike that case, the Hoods allege the defendants repeatedly committed overt acts—not just that they built a new development, like in *Humphries*. In their amended complaint, the family alleged:

> It is believed that [two defendants] failed to maintain storm control basins in the development; no sediment control ponds were maintained in the developments; that there was construction activity in the developments; and that the lack of these proper controls contributed to the flooding of Plaintiffs' house on January 2, 2017, and the prior floods.

> It is further believed that [a third defendant] failed to provide for and maintain proper sediment and erosion control practices and/or proper storm water control practices on the land they were mining; and that said failure contributed to the flooding of the Plaintiffs' house on January 2, 2017, and the prior floods.

14

And all these actions, the family alleged, "significantly contributed to the severe clogging of the drainage ditches and storm water system servicing Plaintiffs' home at 105 Amanda Drive and caused the flooding of said home." In their response to the motions for summary judgment, counsel for the Hoods also argued that the defendants responsible for the construction were "responsible for their erosion control and storm water prevention measures until they complete[d] the development of the property." This was not just a case where there was one specific day where every single possible action occurred. Taking the evidence in the light most favorable to the Hoods, as we are bound to do, they occurred over a series of months and years. As a result, this case evokes the continuing tort doctrine in *Robertson*: each individual flooding constitutes a new cause of action, which tolls the statute of limitations. For that reason, summary judgment must be reversed on this point.

¶29. Our State guarantees to each citizen that "[a]ll courts shall be open; and every person for an injury done him in his lands, goods, person, or reputation, shall have remedy by due course of law[.]" Miss. Const. art. 3, § 24 (1890). There is a reason those Mississippians gathering at the end of the nineteenth century placed the right to a remedy "for an injury done him in his lands" before chattel, body, or character. At that time the State was almost exclusively centered on an agrarian economy; a loss or damage to lands through timber cutting, waste, or flood could have easily destroyed the finances of a family.

¶30. This is also true today, and our laws—statutory and common—have adapted accordingly. *See Punzo v. Jackson County*, 861 So. 2d 340, 345 (¶17) (Miss. 2003) (grafting a discovery rule into the Mississippi Tort Claims Act for latent injuries, specifically regarding

15

flooding); Miss. Code Ann. § 95-5-10 (Rev. 2018) (creating the tort of trespass to timber, where a defendant must pay "a sum equal to double the fair market value of the tree cut down, deadened, destroyed or taken away, together with the reasonable cost of reforestation"); *Tolbert v. Southgate Timber Co.*, 943 So. 2d 90, 98 (¶27) (Miss. Ct. App. 2006) (acknowledging "a suit for common law waste could be brought against the timber cutter" in lieu of a claim for trespass to timber "[w]hen a cotenant had timber cut because of permission granted by another cotenant"). Statutes of limitation should not be sharply drawn against latent injuries from water since "[t]he flooding of one's home can be costly and devastating," and "determining the exact cause producing the injury can be confusing, complicated, and often the product of science." *Milam v. Kelly*, 282 So. 3d 682, 695-96 (¶48) (Miss. Ct. App. 2019) (Lawrence, J., dissenting).

¶31. The repeated floods of their home on Amanda Drive did not just cost the Hoods money. They alleged that "[d]ue to the repeated flooding" they "were forced to move out of their home," eventually selling it "at a severely reduced price." Our precedent recognizes that each of the floods created "a new cause of action," and as a result constitutes a continuing tort. *Robertson*, 39 So. 3d at 939 (¶24). To rule otherwise leaves the Hoods adrift, in violation of our Constitution guaranteeing a remedy and our precedent holding that the statute has not yet run. As a result, I must respectfully dissent in part.

**WESTBROOKS AND LAWRENCE, JJ., JOIN THIS OPINION. McDONALD AND SMITH, JJ., JOIN THIS OPINION IN PART.**